# THE SUPREME COURT

OF

# THE STATE OF LOUISIANA.

---

### WESTERN DISTRICT.

### ALEXANDRIA, OCTOBER, 1840.

---

### PEPPER ET AL *vs.* DUNLAP.

APPEAL FROM THE COURT OF THE NINTH DISTRICT, JUDGE DAVIS PRESIDING.

Discrepancies in a notarial act of sale and of protest, which appear to be mere *clerical* errors, and are immaterial to the decision of the cause, do not affect the validity of such acts.

Where certain notes are not *paraphed* and identified with a mortgage, yet, if upon comparison of dates, and the notes having been executed according to the terms and conditions of the act of sale and mortgage, it is sufficient to support the executory proceeding.

A mortgage is in its nature indivisible, and prevails over every part of the immoveable subjected to it, and the mortgaged premises must be sold to satisfy the whole debt it was taken to secure, and not a part thereof.

The purchaser of property at sheriff's sale, is personally bound for the surplus of the adjudication, still secured by special mortgage on the property sold, and holds the surplus subject to the claim of the inferior mortgage creditors; and if he fails to pay when it is demanded of him, he is liable to be proceeded against as a third possessor.

WESTERN DIST.
*October*, 1840.
━━━━━━━
PEPPER ET AL
*vs.*
DUNLAP.

So, where a seizing creditor only sues for such instalments of a debt, secured by privilege or special mortgage, as are due, the property so mortgaged is to be sold for the whole of the debt, on such terms of credit as are granted by the original contract; although such creditor does not show that the subsequent instalments belong to him, or that he is the holder of all the notes included in the contract of mortgage.

This is an appeal from an order of seizure and sale.

The plaintiffs obtained an order of seizure and sale, on their mortgage, against the plantation and eighteen slaves of the defendant, for the payment of a note of four thousand nine hundred dollars, on which was a credit of one thousand nine hundred and forty-seven dollars, and another note of six thousand one hundred and sixty dollars; in all, nine thousand one hundred and thirteen dollars, which notes had been given in part payment of the original price of said plantation and slaves; being the second and third notes out of seven, which were given for the several instalments, into which payment was divided. The notes were not *paraphed* or identified with the mortgage, except as they corresponded in dates and amounts with the act of sale and mortgage. The petition describes all the notes given, and prays that the mortgaged property be sold to satisfy all the notes, but on a credit to meet those not due.

The order of seizure issued in the form prayed for, and the defendant appealed *directly to this court.*

There were some discrepancies and irregularities in making out the record and the documents contained in it, which appeared to be clerical mistakes in copying the papers.

*Poindexter* and *O. N. Ogden,* for the plaintiff and appellees, explained the apparent discrepancies in the record, in relation to the notarial act of sale, and the protest of the note signed by G. W. Hewett, instead of G. W. Keeton, the parish judge who made the protest. The act of sale was passed in the parish of Carroll, in which the property was then situated, but, by mistake in copying, is made to appear in the parish of Concordia. These are clearly clerical errors and mistakes, and ought not to prejudice the appellees.   6 *Louisiana Reports,* 646.

2. The notes are sufficiently identified with the act of sale and mortgage, by a correspondence in dates and amounts, and, also, by express reference to the notes. They are identified with the act, and described as being of even date therewith, and their tenor and amount are particularly set forth. 7 *Lousiana Reports*, 468.

3. The appellees are not to suffer, if the appellant has brought up his appeal on an imperfect record. It is full of errors and omissions; none of them, however, are of much importance, and all of them evidently clerical. The substance and material facts and documents, show clearly the true nature of the case, and will enable the court to decide on the merits.

4. The appellees deny that the order of seizure and sale contravenes the agreement and covenant in the mortgage, as respects the release of the ten slaves or payment of the second note. The payments made are set out in the petition, and allowed, and it is shown that the defendant had not complied with that stipulation which allowed the release of the ten slaves, because he had not completed the payment, as required.

5. At any rate, if the court is of opinion there is error in seizing the ten slaves, which were to be released on a particular payment being made, it can amend the order in this respect. There are eighteen slaves together with the land, included in the mortgage, and should the non-production of the first note, or the credit on the second, be considered as a compliance with this condition, then the remaining slaves and the land can be ordered to be sold.

6. There is no law requiring the production of the notes, not due, to the judge on granting the order. They are fully described and stated in the act of sale and mortgage.

*Hyams* and *Dunbar*, for the defendant, contended:

1. There is no legal act of mortgage, by notarial act. It appears that the notary was a notary for the parish of *Carroll*, and the act appears to have been passed in the parish of

*Concordia.* He had no official character out of the parish for which he was appointed.

2. The protest of the note for four thousand nine hundred dollars, appears not to be signed by the parish judge, *G. W. Keeton,* but by *G. W. Hewett,* and is illegal, and furnishes no evidence of due demand of payment, which is a condition precedent to recovery.

3. The notes not being paraphed, there is nothing by which they can be identified with the act of mortgage, (if there be any act of mortgage, which is denied,) *so as to authorize executory process.*

4. The plaintiffs do no where allege, nor have they exhibited any evidence, that they were holders of the notes not due, at the time of the judgment, and yet, the judgment acts on them, and gives a judgment thereon for the plaintiffs.

5. It is a principle of law, that no executory process can issue before the judge at chamber, in the absence of any proof which, in an ordinary issue, the plaintiff would have to prove, before a recovery could be had against defendant ; *whatever* a defendant would have the right of asking proof of, in an ordinary action, must appear on the face of the record, in executory process. In executory process and ex parte judgments of that nature, nothing is taken for granted, but every condition requisite to a recovery, must appear on the face of the papers ; and here there is no such exhibit; and yet, both the clerk and the judge certify, that all the documents exhibited and evidence adduced, are embodied in the transcript.

6. By the instrument *purporting* to be a mortgage, it will appear that there is a stipulation that the " *mortgage shall be raised on the ten slaves mortgaged, as soon as the two first promissory notes are satisfied, amounting to seven thousand four hundred dollars, and due 1st March,* 1838." These two first notes are, one for two thousand five hundred dollars, and one for four thousand nine hundred dollars, making together the said sum of seven thousand four hundred dollars. The first note, being the one for two thousand five hundred dollars, seems to have been paid and extinguished, (as it no where

appears, and, although the first due at the time of the judgment, nothing is said of it,) and on the note of four thousand nine hundred dollars, there is a credit endorsed of one thousand nine hundred and forty-seven dollars, making an aggregate payment of four thousand four hundred and forty-seven dollars, which would leave, on being deducted from seven thousand four hundred dollars, the sum of two thousand nine hundred and fifty-three dollars, for which there yet remained a mortgage on the slaves. If this amount (two thousand nine hundred and fifty-three dollars,) is collected from the defendant in any manner, by plaintiff, whether amicably or through the agent of his selection, (to wit, the sheriff,) the slaves would be free of mortgage. Therefore, the judgment of the court, if not otherwise tainted with manifold illegalities, would be illegal on this ground alone ; as it should have directed that in the sale *for cash,* that so soon as the sum of two thousand nine hundred and fifty-three dollars, (for which sum *only,* there was an hypothecary claim against the slaves,) was raised, that the sheriff should proceed no further against the slaves, or those which might remain after the receipt of that amount by him, but that they should then be discharged out of his custody and delivered up to defendant, and that beyond that amount, the claim by mortgage be restricted to the land ; leaving the plaintiff the option, (the mortgage being indivisible) to make the whole amount of two thousand nine hundred and fifty-three dollars out of any part of the mortgaged property, whether land or slaves : Whereas, the judgment is made executory and *hypothecary,* for the *whole debt* on land and *slaves,* whether due or not due.

*Simon, J.,* delivered the opinion of the court.

This is an appeal from a judgment or order of seizure and sale, granted on a notorial act of sale of certain property sold by plaintiffs to defendant for a large amount, a great portion of which was paid cash at the time of the sale, and the balance to be paid at certain terms of credit. Seven notes were given for the respective amounts of the several instalments ; the first note was regularly paid, but the second

PEPPER ET AL.
*vs.*
DUNLAP.

and third remaining unsatisfied, except a sum of one thou- sand nine hundred and forty-seven dollars on the second, the plaintiffs sued out the order of seizure and sale appealed from, to satisfy the amount due on said two notes. The other four notes being not due at the time of the application, the plaintiffs only annexed to their petition, the two notes of which they seek the recovery, but pray that the property seized, be sold to satisfy the whole debt according to *article* 686 of the *Code of Practice.* It is to be remarked that the act of sale contains a stipulation, from which it appears that after the payment and satisfaction of the two first instalments, amounting together to seven thousand four hundred dollars, the mortgage on ten of the slaves should be released, but the defendant has only paid four thousand four hundred and forty-seven dollars, and there remains due two thousand nine hundred and fifty-three dollars, now a part of the claim set up in plaintiffs' petition.

The plaintiffs contend there is no legal act of mortgage, because the notary who received it, was a notary for the parish of Carroll, and the act appears to have been passed in the parish of Concordia ; and he objects also to the protest of one of the notes, which appears to be signed by G. W. Hewett, instead of the parish judge G. W. Keeton. On examining the record, we have convinced ourselves that these apparent discrepancies are mere *clerical errors*, which are immaterial to the decision of this cause. Previous to copying the caption of the act, the clerk instead of copying "parish of Carroll," wrote "parish of Concordia," but from the context of the act, from the certificate of the notary, and from the dating of the notes, executed at the same time, it is clear that the act was passed in that part of the parish of Carroll which is now annexed to the parish of Madison. The name of G. W. Hewett at the foot of the protest, was clearly intended to be G. W. Keeton, as the body of the protest shows it was done by Keeton, and the certificate of notice, which immediately follows, is signed by him.

*Discrepancies in a notarial act of sale and of protest, which appear to be mere clerical errors, and are immaterial to the decision of the cause, do not affect the validity of such acts.*

It is farther urged, that the notes not being *paraphed*, there is nothing by which they can be identified with the act of mortgage. It is true the identification of the notes

annexed to the act of sale, does not appear by the usual paraph "*ne varietur*," but on a comparison of the dates of the notes with the sale, and the circumstance of their having been executed according to the terms and conditions of the sale, are sufficient to make us presume that they are the same notes alluded to in the notarial act filed with, and made a part of the plaintiffs' petition, unless the contrary be shown. 7 *Louisiana Reports,* 468.

PEPPER ET AL.
*vs.*
DUNLAP.

Where certain notes are not *paraphed* and identified with a mortgage, yet if upon comparison of dates, and the notes having been executed according to the terms and conditions of the act of sale and mortgage, it is sufficient to support the executory proceeding.

The next objection, and this we consider the most important, is that the judgment of the lower court acts on the notes which, not being due, were not represented; that plaintiffs have exhibited no evidence of their being the holders of said notes, and that no executory process can issue before the judge at chambers, in the absence of any proof which, in an ordinary issue, the plaintiffs would have to adduce before a recovery could be had against defendant : Plaintiffs, in seeking to enforce their rights on the notes due, pray that the property be seized and sold to satisfy the whole debt, under the *article* 686 of the *Code of Practice.* They do not claim the amount of the four last notes, but require substantially and in effect, that, in proceeding to the sale of the property in satisfaction of the sum due them, the purchaser thereof be put, as to the balance of the price, in the place of the original debtor, on his paying said balance to the holders of the other notes, according to the terms of the original contract. The mortgage is in its nature indivisible, and prevails over each and every portion of all the immoveables subjected to it. *Louisiana Code, article* 3249. If so, how can property subject to a special mortgage be sold to satisfy a part of the debt, the whole of which the mortgage secures ; would the purchaser acquire such title as he is legally entitled to, and would he not, on the contrary, have to run the danger of being disturbed for the payment of the balance of the debt, although the price of his purchase would be the full value of the property? Such proceedings would in our opinion, be met with such difficulties, and inconveniences that an injury must necessarily result to either of the parties, and we cannot sanction the doctrine that the creditor of a part

A mortgage is in its nature indivisible, and prevails over every part of the immoveable subjected to it, and the mortgaged premises must be sold to satisfy the whole debt it was taken to secure, and not a part thereof.

of a debt secured by special mortgage, for which notes have been given, may be allowed or must be restrained to seeking and obtaining the satisfaction of his claim out of the sale of the property mortgaged for the whole, without any regard to the right of those who may be the holders of the other notes, and with an entire disregard of the consequences as to the purchaser of the property. · Our laws being silent on this subject, we must reason by analogy : In the case of a seizing creditor who has a privilege or special mortgage on the property seized, in preference to other privileges or special mortgages, the property must ·be sold at any price, although the purchase money be not sufficient to satisfy all the privileges and mortgages with which it is burdened. *Code of Practice, article* 685. In such case, the sheriff is to require the payment of the price only to the amount of the privilege or special mortgage of the seizing creditor, and the purchasser keeps the balance to be by him applied (if there be any surplus) to paying the special morgages existing on the property, subsequent to that of the suing creditor. *Idem., article* 707. The purchaser is bound for nothing beyond the price of the adjudication, and if, after paying the suing creditor, there remains nothing, the sheriff must give him a release from the inferior mortgages. *Idem., article* 708. In order to obtain the satisfaction of their claims, so far as the surplus of the adjudication may amount to, an hypothecary action lies against the purchaser of property seized and sold, and the creditors who have said privileges and mortgages, may proceed in the same manner, and under the same rules and restrictions as are applicable to a third possessor of mortgaged property. *Idem., article* 709. It is clear then, from these articles, that the purchaser of the property is personally bound for the surplus of the adjudication, still secured by special mortgage on the property sold, and that he holds said surplus in his hands, subject to the claim or call of the creditors who had the inferior mortgages, and who had nothing to do with the sale from which said surplus proceeded, and that when it is demanded of him, if he does not pay it, he is subject to being proceeded against in the same manner as

WESTERN DIST.
October, 1840.

PEPPER ET AL.
vs.
DUNLAP.

if he were a third possessor. This, it seems to us, would be a safe and proper rule to adopt in a case like the present, where the different instalments are secured by the same mortgage, and where the rights of the creditors are of equal dignity, and we cannot see any good reason why, in the absence of any law, it should not be adopted. The jurisprudence of this court has established, that sheriffs are required to execute process issued on executory proceedings, in the same manner as in ordinary cases of *fi. fa.* 8 *Louisiana Reports*, 581. *Code of Practice, article* 745 ; and according to the *article* 686 of the same code, " a seizing creditor who has a privilege or special mortgage on the property seized, for a debt of which all the instalments are not yet due, may demand that the property be sold *for the whole of the debt,* provided it be on such terms of credit as are granted to the debtor by the original contract for the payment of such instalments as are not due. " There is nothing in this law that requires the creditor, to whom the right is allowed, to show that he is either the holder of the notes given for such instalments as have not expired, or the creditor of such part of the whole debt as may not be due ; and as the law does not make any distinction, we are not disposed to make any. We think, therefore, that we may safely establish, as a rule of practice, that when a seizing creditor only sues for such instalments of a debt secured by privilege or special mortgage as are due, the property so mortgaged is to be sold for the whole of the debt, on such terms of credit as are granted by the original contract, although such creditor does not show that the subsequent instalments belong to him, or that he is the holder of all the notes mentioned in the contract of mortgage, and that it suffices that the several instalments, as are not due, be mentioned in the petition. This appears to have been done in this case, and we are of opinion that the judge *a quo,* did not err in ordering the sale of the property mortgaged as prayed for in plaintiffs' petition.

But the defendant contends, that with regard to the ten slaves, under the stipulation contained in the act of mortgage, a part of the sum of seven thousand four hundred dol-

The purchaser of property at sheriff's sale, is personally bound of the adjudication, still secured by special mortgage on the property sold, and holds the surplus subject to the claim of the inferior mortgage creditors; and if he fails to pay when it is demanded of him, he is liable to be proceeded against as a third possessor.

So, where a seizing creditor only sues for such instalments of a debt, secured by privilege or special mortgage, as are due, the property so mortgaged is to be sold for the whole of the debt, on such terms of credit as are granted by the original contract; although such creditor does not show that the subsequent instalments belong to him, or that he is the holder of all the notes included in the contract of mortgage.

lars having been paid, the sheriff should not proceed any farther against said slaves, or those which might remain, after the receipt of the balance of two thousand nine hundred and fifty-three dollars, and that beyond said balance, the claim by mortgage should be restricted to the land. The stipulation alluded to, is as follows: "And it is understood by the parties, that the mortgage on the above named ten slaves shall be released as soon as the two first promissory notes are satisfied; amounting to seven thousand four hundred dollars, due first March, 1838. It seems to us that in order to entitle himself to the benefit of this stipulation, the defendant should have shown that he has fulfilled the condition on which the release of the mortgage of the ten slaves depends, and that, therefore, having not satisfied the two first promissory notes, he cannot now be allowed to claim said release. It is perfectly clear to us, that the condition cannot be divided, and that we cannot understand the clause in the act to mean that the ten slaves are only mortgaged to satisfy seven thousand four hundred dollars, but that, on the contrary, said slaves being mortgaged for the whole of the debt, they should be released, provided the sum of seven thousand four hundred dollars, due on the two first notes, be regularly paid; which was not done.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.