JAMES GALLIER *v.* MANUEL JOSEPH GARCIA, Sheriff, and another.

Where property is ordered to be sold for cash to satisfy the claim of a plaintiff, who, after the adjudication, agrees to allow the debtor time for the payment of the amount of his bid, and informs the sheriff that the arrangement is satisfactory to him, the officer is bound to convey the property to the purchaser, as if the amount had been paid in conformity to the terms of the adjudication.

A rule to show cause why the terms of a judicial rule should not be complied with, or the property again sold at the risk of the first purchaser, made absolute, the effect of which would be to annul a sale made by a competent officer, can have no effect unless signed by the judge.

Article 2589 of the Civil Code, relative to sales *à la folle enchère*, does not apply to those made by a sheriff under writs issuing on final judgments. In the latter, if the price be not immediately paid, where the sale is for cash, or if the proper surety be not given at once, when on credit, the sheriff must proceed forthwith, under article 689 of the Code of Practice, to sell the property anew. If he give any delay, it is at his own risk, and he will be responsible in damages to the plaintiff.

A sale *à la folle enchère*, must be on the same terms and conditions as the first, or it will be annulled.

APPEAL from the District Court of the First District, *Buchanan*, J.

GARLAND, J. In April, 1836, Thomas Barrett, by a notarial act, sold to Gallier and one James Walsh a number of lots of ground situated in the faubourg Livaudais, in the parish of Jefferson, on which was erected a steam saw mill and other improvements, and thirteen slaves, for the sum of $108,900, payable in five instalments, to wit: three notes amounting to $19,260 on the 1st of May, 1837; four notes amounting to $20,520 on the 1st of May, 1838; five notes amounting to $21,780 on the 1st of May, 1839; six notes amounting to $23,040 on the 1st of May, 1840; and seven notes amounting to $24,300 on the 1st of May, 1841. Thirteen of these notes were drawn by Gallier and indorsed by Walsh, and twelve drawn by Walsh and indorsed by Gallier. To secure the payment of these notes a mortgage was retained on the lots, saw mill, and slaves.

The Mechanics' and Traders' Bank of New Orleans became the holders of five of these notes, one due in May, 1838, for $5,100, and four others due May 1st, 1839, amounting altogether to $22,150, exclusive of interest and costs. In December, 1839, the Bank, for the purpose of coercing the payment of this sum, at the

instance of Gallier, took out an order of seizure and sale against the mortgaged property. In the petition the sum due to the Bank is set forth, and it is further stated that none of the other notes then due, amounting altogether to $61,560, with interest and costs, had been paid, but that the holders of these notes are unknown to the said Bank ; and the prayer is that the property may be sold for cash to pay the aforesaid sum of $61,560, with interest and costs, the purchaser to assume the payment of the six notes falling due May 1st, 1840, and the seven notes falling due May 1st, 1841. The order of seizure was issued, and went into the hands of Manuel Garcia, sheriff of the parish of Jefferson, who seized the property, and advertised it for sale on those terms. After the seizure, the Bank, on the 14th of January, 1840, presented a supplemental petition in which it is stated that there was an error in the original petition, in alleging that $61,560 was due on account of the original purchase, as it was ascertained that $28,009 96 had been paid, leaving the balance due $33,550 04, of which $11,770 04 bore interest at the rate of ten per cent per annum from the 4th of May, 1838, and the sum of $21,780, the same rate of interest from the 4th of May, 1839. It is prayed that the order of seizure may be so modified, and by an order of the same judge who granted the original order, it was so modified. But previous to the day of sale, the Bank, by its attorney, authorized the sheriff to announce " that of the above cash payment, the purchaser may liquidate the sum of $18,550," by adding interest to different parts of it to date, and then giving notes, in three instalments, with good indorsers. The property was appraised at $75,000, and struck of to Gallier, the plaintiff, for $51,000, being more than two-thirds of its value. The attorney for the Bank, who, it seems, also acted for Gallier, then told the sheriff who would be the indorsers for the $18,150 and interest, for which notes were to be given ; and further told him that, in a few days, he would remit him an authorization from the parties to whom the cash was to be paid, to pass the deed of sale of the property to Gallier. The sheriff says he called several times for this authorization, which was not delivered to him for various reasons ; that his costs were paid him by Gallier ; and that various documents were delivered to him from the Bank and other holders of the notes, which, not being satisfactory,

Gallier v. Garcia, Sheriff, and another.

he would not pass a sale; that, finally, the counsel for Gallier told him, as the Bank and all the holders of the notes were satisfied, he did not care about a sale, but would rely upon the adjudication. With this the sheriff was not satisfied, although no creditor complained : and several months after, Walsh, the co-proprietor with Gallier, and a co-defendant in the order of seizure and sale, took a rule in the District Court, on the Mchanics' and Traders' Bank, the sheriff, and Gallier, to show cause why the terms of the sale should not be complied with, or the property again sold at the risk of Gallier, as he had not complied with the terms of the sale. What cause was shown against this most extraordinary proceeding, the record does not definitely inform us; but it appears that the judge, after hearing the parties, made the rule absolute, and neither Gallier, the Bank, nor any one else, has ever appealed from the decision. In September, 1840, more than six months after the sale, the property was again offered for sale for cash, at the risk of Gallier, and in spite of his remonstrances and notice to all concerned, and of the express orders of the Bank represented by its regular attorney, who assured the sheriff that the Bank was satisfied and forbid the sale, the deputy sheriff, acting, as he said, in obedience to the orders of his principal, insisted upon selling the property, and did finally adjudge the whole of it to Felix Garcia, the brother of the sheriff, for $10,500, which he says he received in cash.

After this sale, Gallier applied to the District Judge for an injunction to prevent the sheriff from putting Garcia in possession, or making him a deed of sale for the property. Gallier prays that the sale and adjudication may be annulled, and the sheriff ordered to make a deed to him, Gallier, in conformity to the adjudication made to him on the 29th February, 1840. The pleadings of the defendants do not materially vary this statement of facts. They ask for the annulling of the first adjudication, for a confirmation of the second, and to be put in possession, with damages.

Some time after the issuing of the injunction, Felix Garcia applied for a monition, which the plaintiff, Gallier, opposed, stating the facts herein recapitulated.

The case came on to be tried, when not a single holder of any one of the notes complained, or alleged that he was injured.

Gallier showed that he had satisfied the Bank, the plaintiff in the order of seizure and sale. He also proved various payments to, and settlements with different holders of the notes, amounting to about $36,160, from a large portion of which the holders of the notes say that Walsh was specially discharged by them, and the holders of the remaining notes say nothing about him, but extend the term of payment upon a continuance of the original mortgage, without having consulted him. Yet this person intervenes in the suit, and prays that the sale to Garcia may be confirmed, averring that it is legal, although his creditors would lose more than $40,000 by it.

The inferior court, in its judgment, goes into the effect of the rule taken by Walsh on Gallier, the Bank, and the sheriff, ordering the property to be again sold at the risk of the purchaser, and pronounces it final and binding on the parties, declaring that it annuls the first adjudication to Gallier, not having been appealed from. The judge further declares that the sheriff acted illegally in the second sale, in adjudicating the property to Felix Garcia at less than two-thirds of its appraised value, which was $75,000. He therefore annulled the adjudication, and perpetuated the injunction, declaring the adjudication to Gallier void. From which judgment Manuel, and Felix Garcia have appealed.

In this court Gallier has prayed for a correction of the judgment:

*First.* By declaring illegal and void the order or judgment of the 14th of July, 1840, on the rule taken by Walsh against Gallier, the Mechanics' and Traders' Bank, and the sheriff, which directed the property to be sold a second time at the risk of Gallier.

*Second.* By amending that part of the judgment which directs the property to be again sold, as the sale of the 29th February, 1840, was legal, and adjudicated the property to the plaintiff.

*Third.* By decreeing the adjudication made by the sheriff on the 29th of February, 1840, to be a complete title in favor of the appellee, Gallier.

Many of the difficulties that now embarrass this cause arise from the terms used in the order of seizure and sale, which directed the sheriff to sell the property for cash to the amount of $61,560, with the interest due on the various instalments which

make up that sum, when the claim of the Bank was for only a little more than a third of that amount. Had the order directed the sheriff to make the sum due to the Bank, and compelled the purchaser to assume the payment of the notes outstanding, the amounts being stated, there would have been no difficulty, as the sheriff would then have claimed only the sum actually intended to be made, and have stated in his deed the assumpsit of Gallier in favor of the holders of the other notes, leaving them to enforce their payment in the manner provided by law, and particularly pointed out in the case of *Pepper, &c.* v. *Dunlap*, 16 La. 169. But the Bank and Gallier seem to have intended to represent the holders of the outstanding notes, having used language in the order of seizure and sale, which induced the sheriff to believe that he was bound to collect the whole amount of those notes, and hold it subject to the demands of the various holders. This was no part of his duty. None of the parties were in any manner the representatives of the holders of those notes, nor had they any right to enforce the payment of them on behalf of the holders. When the adjudication was first made, if the amount due to the Bank had been paid or adjusted to the satisfaction of its agents, it was the duty of the sheriff to have made Gallier a deed, to have expressed in it that he was to pay the outstanding notes, which should have been described as accurately as possible, and to have left the holders to take care of their own interests, at such times and in such manner as they might adopt and the law would allow. This not having been done, and the adjudication having been declared null by a judicial decree, to which both the Bank and Gallier were parties, and no appeal having been taken from it, the embarrassments are increased. The modification of the order of seizure and sale seems not to have been noticed by any one in the proceedings subsequent to the first sale, and the sheriff appears to have insisted on the payment of the whole sum for which the order was originally taken out, notwithstanding the admission in the supplemental petition of payments to the amount of $28,809 96.

It is not questioned by any one that the adjudication to Gallier, made on the 29th of February, 1840, was legal, nor, if it had been complied with, that it would have entitled him to a deed. The

complaint made by the co-defendant of Gallier is, that the terms had not been complied with, to wit, that he had not paid the Bank or the holders of the outstanding notes ; whereupon the District Judge granted the rule heretofore mentioned, and, after hearing the parties, ordered the adjudication to be annulled, and the property to be again offered for sale at the risk of the first purchaser. This judgment the judge says he will not now examine into, as he considers it final, none of the parties having appealed therefrom. In this we differ from the learned judge, and consider the question still open.

If the doctrine relative to sales à la folle enchère be applicable to sales made by sheriffs, the intervention of the court was entirely unnecessary, as the officer had the right to judge whether the terms of the bid had been complied with, and if they had not been, to sell again ; and the legality of his proceedings would be inquired into whenever a suit should be brought to recover the difference in the price between the first and second adjudications. But in this case the plaintiff avers, and we think correctly, that the pretended judgment on the rule is no bar to an investigation of the whole question, as it has not been signed, and has no force. The record shows that the judgment has not been signed, and it, therefore, stands as if it had not been given ; at least, the irregularity is such as may be inquired into on the monition applied for by Felix Garcia ; and as its effect, if it have any, will be to annul an adjudication made by a competent officer, it is as essential that it should be signed by the judge, as any other judgment which decrees the rescission of a sale.

We now come to the examination of the prayer of the plaintiff that the sheriff be ordered to make him a sale, in conformity with the adjudication of the 29th of February, 1840. If the plaintiff has complied with the bid which he made at that time, there is no question but that he is entitled to a conveyance.

The evidence shows that Gallier has fully satisfied the Mechanics' and Traders' Bank, the plaintiffs in the order of seizure and sale, for the sum for which it was taken out, and that Walsh, so far as the Bank is concerned, is discharged from all liability. The balance, then, for which a cash payment was to be made, was, according to the supplemental petition, less than $12,000,

with interest and costs. The testimony of the Cashier of the Gas Light Bank shows that $28,800 has been paid to that institution. The Cashier of the Merchants' Bank proves that the sum of $2692 89 has been paid on account of a note for $5220 held by it, and that for the balance time has been accorded to Gallier. Lanfear proves that he holds a note for $4700, and it is shown that $1500 has been paid on account, and satisfactory arrangements made for the balance. Brown, Brothers & Co. held three notes, amounting to $10,940, for which Nicholson, a member of that firm, says that Gallier had satisfactorily arranged with him, and that he had agreed to discharge Walsh. The Cashier of the Citizens' Bank proves that Gallier has paid a note of $4200 held by it, and that Walsh is entirely released. Other witnesses prove that Gallier was willing to make satisfactory arrangements with them in relation to other notes ; and an examination of the testimony convinces us that, but for the interference of Walsh, and the refusal of the sheriff to pursue the orders given him by the plaintiffs in the order of seizure and sale, that the whole matter would long since have been settled to the satisfaction of all the parties holding the notes.

As to the sale made on the 9th of September, 1840, we have no doubt that the District Court was correct in decreeing it illegal, and in annulling it. After a most deliberate examination of the question, we are of opinion that the doctrine relating to sales *à la folle enchére*, is not applicable to those made by a sheriff under writs issuing on final judgments. Article 2595 of the Code declares that judicial sales are subject to the same rules as other public sales, in all such things as are not contrary to the formalities expressly prescribed for such sales, and with the modifications made thereafter. When we turn to article 2589 of the Code, and observe the formalities required for selling property at the risk of the first bidder, we find them altogether different from the directions given to the sheriff by article 689 of the Code of Practice. Under the former article, if the price bid be not paid, no steps can be taken, until after the expiration of ten days, to have a second sale, and then the customary advertisements must be published ; but, under the latter, no such delays or formalities are necessary ; the sheriff may, if the price be not paid, where the sale is for

cash, or if the proper sureties are not given when it is on a credit, proceed anew to sell the property, and adjudge it to another person. The decisions of this court have been entirely adverse to the idea that the sheriff has to wait ten days, and then sell after the customary notices. In 3 La. 475, it was held that the sheriff was not bound to wait three days to enable a bidder to find security, although the sheriff is allowed that number of days to make a deed. In 4 La. 392, the sale was for cash, and it was decided that the sheriff was not bound to wait, as the bidder did not make immediate payment, but had a right to sell anew. This doctrine has, in other cases, been affirmed by this court, and very recently, in 19 La. 307, we said that if a sheriff gives any delay, he does it at his own risk, and is responsible in damages to the plaintiff in the execution. When a sale is made for cash, the sheriff should, at once, call on the purchaser for payment, and when on a credit, it is his duty to require the names of the sureties and the execution of the necessary obligation to pay the price offered.

The impression that article 2589 of the Civil Code does not apply to sheriffs' sales, is not a new one, as the decision in 4 La. 392, establishes.

But admitting that a second sale could have been made by the sheriff, at the risk of Gallier, still the adjudication to Felix Garcia would be null and void, as the sheriff sold the property for less than two-thirds of its appraised value. It has been repeatedly decided that the second sale must be on the same terms and conditions as the first; and this not having been the case in the present instance, we concur with the District Judge in his opinion that the second sale was a nullity. It was the interest of the creditors, as well as of the debtors, that the property should sell for as much as possible, and none of them having waived their legal right to have the property sold on a credit of one year, if it did not bring two-thirds of its appraisement in cash, the sheriff had no right to change the terms.

The judgment of the District Court is, therefore, affirmed, so far as it annuls the adjudication of the property made to Felix Garcia, by the sheriff of the parish of Jefferson on the 9th of September, 1840, and the injunction perpetuated which prohibits the sheriff from making a deed to said Garcia. And it is further or-

dered and decreed, that so much of said judgment as annulls the adjudication of the property described in the petition to James Gallier on the 29th of February, 1840, be avoided and reversed, and said adjudication is hereby confirmed; and the sheriff of the parish of Jefferson is hereby directed to make a deed to said Gallier on his producing to him evidence that the Mechanics' and Traders' Bank of New Orleans have been satisfied to the amount for which the order of seizure and sale originally issued, and to insert in said deed a clause that said James Gallier binds himself to pay the outstanding notes of Walsh, indorsed by said Gallier, and those of said Gallier indorsed by Walsh, as specified in the aforesaid adjudication; leaving the holders of said outstanding notes their legal rights to enforce their claims in any lawful manner against said James Gallier, or against the property so sold to him. This judgment is not in any manner to prejudice the rights or claims of Walsh, in any future settlement or contest with Gallier in relation to their common property or partnership transactions. The costs of this appeal, and those in the court below, to be paid by the defendants in the injunction.

*L. C. Duncan* and *Eustis,* for the plaintiff.

*Canon,* for the appellants.