## Ives and Wife v. Citizens' Bank et al.

Where by the charter of a bank the default of a stockholder to pay one of the installments of the stock loan at maturity, renders the whole amount of the loan immediately exigible, and deprives the stockholder of the delays to which he was originally entitled, the bank has a right to waive the enforcement of this entire obligation of its defaulting debtor ; and where such waiver has been made, the Clerk of the court cannot, by his order of seizure and sale give greater relief than has been sought in the petition.

If the plaintiff show injury to himself by the sale of property under such an order, even the *bona fide* purchasers' title is not valid.

APPEAL from the District Court of the Parish of St. Bernard, *Foulhouze, J.* *G. S. Lacy, R. A. Upton* and *A. G. Semmes,* for plaintiffs and appellants. *P. A. Ducros, Jr.,* and *Elmore & King,* for *Marrero & Serpas.* *A. & A. Pitot,* for Citizens' Bank.

BUCHANAN, J. The plaintiffs sue (by petition filed June 7th, 1858,) to set aside an adjudication made on the 5th of June, 1858, under the following circumstances :

The Citizens' Bank being the holder of a stock note of the present plaintiffs, *Mrs. Ives* and her husband, secured by mortgage on a plantation and slaves be-

longing to Mrs. *Ives*, and payable in annual installments of five hundred and twenty-five dollars each, on the 1st of January of each year, according to the charter of the Bank,—the said *Mrs. Ives & husband* having failed to pay the installment due the 1st January, 1858,—instituted suit by executory process in the District Court of the parish where the mortgage property was situated (St. Bernard), against *Mrs. Ives & Husband*, in March, 1858; and although according to the eleventh section of the charter of the Bank, it might have treated the whole note (being at that time $15,750) as due; yet, in the petition for executory process, the Bank prayed that the sale might be made on the following terms and conditions:

" The purchaser to furnish a stock note for the sum of $15,225 payable on the first day of January, 1859, or renewable according to the charter; and the balance of the price cash."

" The purchaser to assume all the responsibilities of a stockholder resulting from the charter and the laws amending the same; and the stock note to be furnished, to be identified with the three acts above mentioned and the Sheriff's deed of sale, to pay and satisfy your petitioner's claim, say $15,750, with 10 per cent. interest from 1st January, 1858, until paid, and costs of suit, and eight dollars costs of copy of the act of sale of 14th January, 1856, the whole by privilege and preference out of the proceeds of the sale."

" And petitioner further reserves the right to claim by privilege and preference out of the proceeds of said sale, the sum of $930, being the amount due for stock contribution on the property and slaves above mentioned, with interest at 8 per cent. per annum, from 1st of May, 1857, until paid."

The property was offered for sale by the Sheriff of St. Bernard on the above terms and conditions, on the 1st of May, 1858, having been appraised, previous to the crying, at something over one hundred thousand dollars. Not fetching two-thirds of the appraised value, the property was readvertised by the Sheriff, on the following terms and conditions:

" The above described property, slaves, &c., having not brought two-thirds of the appraised value, the present sale is made at twelve months credit: the purchaser being required to furnish good and sufficient security and special mortgage on the above described property and slaves, bearing interest from the day of the adjudication, at the same rate as those allowed by the judgments."

At this second crying, the property seized was adjudicated to the defendant, *Marrero*, for the price of sixty-five thousand one hundred dollars, for $44,946 of which price he furnished his bond at twelve months credit, with *Emile La Sère* as security; retaining the remainder of the price ($20,153 33) in his hands, to satisfy privileged debts and special hypothecations bearing upon the property.

This sale is attacked on several grounds, of which only two are urged in this court, to wit:

1st. That the property seized ought to have been advertised and sold at the second crying, upon a credit of twelve months, to the extent of the entire amount actually matured and due at the time of the sale to the Citizens' Bank; and for the balance of the Bank debt, the purchaser to furnish his stock note, payable on the first day of January, 1859, or renewable according to the charter of the Bank, and to assume all the responsibilities of a stockholder.

2d. That the adjudication to *Marrero* has been rendered null and void, and of no effect, by the failure and default of the said *Marrero* to give security upon his twelve months bond, at the time and in manner and form as required by law.

IVES
v.
CITIZENS' BANK.

As explained in argument, the latter of these two grounds of nullity consists in this, that *Emile LaSère*, the security of *Marrero* upon his twelve months bond, is not a resident of the parish of St. Bernard, as required by Article 3011 of the Civil Code; a fact which is admitted in the record.

The opinion which we entertain upon the other ground renders it unnecessary for us to consider the objection to the twelve months bond.

On the first ground above stated, we are of opinion, that the plaintiff is entitled to judgment. The point has been thus ruled in *Hillsgburg* v. *Holmes*, 7th La. 565, and in *Rice* v. *Schmidt*, 11 La., 70. See also *Pepper* v. *Dunlap*, 16 La., 163; *McDonogh* v. *Frost*, 1 Rob. 295; *Union Bank* v. *Smith*, 10 Rob. 49; *Robinson* v. *Aubert*, 6 Rob. 462; *Armor* v. *Downs*, 2 An. 242.

The District Judge decided that the sale, at the second crying by the Sheriff, was properly advertised to be made on twelve months credit, for the whole amount of the Citizens' Bank mortgage, because, by the eleventh section of the charter, the default of a stockholder to pay one of the installments of the stock loan at maturity, has the effect of making the whole amount of the loan immediately exigible, and of depriving the stockholder of the delays for payment to which he was originally entitled. This is true. But the forfeiture of the stockholder's rights in this respect is a penalty imposed by the law, in the interest of the Bank, the creditor, and which the Bank may waive, if it please. The Bank had waived that penalty, in the case under consideration. It asked in its petition for seizure and sale, for nothing more than the immediate payment of what was matured and past due by the terms of the contract with its debtor, consenting that the purchaser of the mortgaged property under the seizure should become a stockholder and debtor of a stock loan to date from the forced sale, and to be payable in yearly installments thereafter. In a word, the Bank desired a novation of its debt, and offered to accept any one for its new debtor, who would fulfill the forfeited engagements of its old debtor, and assume that debtor's responsibilities for the future. But the Sheriff has given the Bank a relief *ultra petitum*. The Bank, made a co-defendant herein, appears and ratifies in its answer this act of the Sheriff. But the case must be judged by the position of the parties at the time of the sale. The relief sought by the Bank in its appeal to the tribunals of the country, is formally set forth in its petition for executory process. It cannot now put its debtor *in duriori casu* by the assertion of new claims, and the imposition of new conditions. The right of a Property Bank to waive the enforcement of the entire obligation of its defaulting debtor under a provision of its charter, and the effect of such waiver, were considered and decided in the case of *The Union Bank* v. *Bradford*, 2 An. 416. In that case, this court held that the Clerk of the court was unauthorized to insert a condition in the order of seizure and sale, not asked by the Bank in its petition, although the Bank would have had the right to require the condition. Its silence was considered by the court as equivalent to a waiver of its peculiar privilege, in that respect, under its charter. The present is a much stronger case for the application of the doctrine; for here, the variance between the prayer of the petition, and the execution of the writ prayed for, is not, as in the *Union Bank* v. *Bradford*, mere matter of inference from a phraseology which was, in fact, susceptible of two constructions, but is direct, palpable and indisputable.

The counsel for the defendant, *Marrero*, admitting the force of these objections to his client's title, invokes the rule in the case of *Mullen* v. *Harding*, 12 An. 271, that " a *bona fide* purchaser at a Sheriff's sale will be protected against any

IVES
v.
CITIZENS' BANK.

attack on his title on the ground of informalities, unless the plaintiff show injury to himself in consequence of such informality." But we think the plaintiffs have made such showing. Two witnesses, who are proved to be persons of large means, swear that they would have bid for the plantation of plaintiffs at the second crying, had the property not been advertised, as it was, on a credit of twelve months, for the whole price; and that they were deterred from bidding by that advertisement. Both these witnesses declare, that they were prepared to, and would have bid to the extent of seventy thousand dollars, which is five thousand dollars more than the price of adjudication.

This additional five thousand dollars, although it would not have gone into plaintiffs' pockets, because the amount of mortgages recorded against plaintiffs, inferior to that of the Bank, exceeded that sum, yet, it would have gone to the payment of plaintiff's debts, and the adjudication must consequently be considered to have injured plaintiffs to that extent.

It is, therefore, adjudged and decreed, that the judgment of the District Court be reversed, and that the adjudication of the plantation, slaves, &c., to *Antonio Marrero*, on the 5th of June, 1858, by the Sheriff of the parish of St. Bernard, in the suit of the *Citizens' Bank of Louisiana* v. *Mrs. Ann E. Ives & John B. Ives, her husband*, be annulled and avoided; and that the defendant and appellee, *Antonio Marrero*, pay costs in both courts.