Tessier vs. Bourgeois.

## No. 9637.

### JEAN TESSIER vs. PAMELA BOURGEOIS — ON RULE AGAINST PURCHASER.

The purchaser of immovable property of an insolvent succession sold under executory process cannot retain the balance of the purchase price after satisfying the claim of the seizing and ranking mortgage creditor, unless there are special mortgages of inferior rank existing against the property, or unless he is threatened with eviction by the holders of general mortgages affecting the property. The right to retain said balance cannot be exercised even if there are special mortgages when it appears that the holders of the same have asked to be paid out of the proceeds of the sale, and when similar proceedings have been resorted to by all the mortgage creditors, who have thus all transferred their rights from the thing to the proceeds.

In such a condition of things the funds must be turned over to the administrator of the succession.

APPEAL from the Twenty-second District Court, Parish of St. James. *Duffel*, J.

*James Legendre* and *St. M. Bérault*, for Plaintiff and Appellee.

*Sims & Poché*, for Defendant and Appellant:

1st.  A purchaser of succession property, sold under executory process, has the right to retain in his hands the surplus of the price of adjudication, after paying the amount of the seizing creditor's writ, to be applied *directly by him* to the payment of anterior, concurrent or subsequent mortgage and privilege creditors. Code of Practice, Art. 707; Morris vs. Cain's Executors, 34 Ann. 657: 2 R. 214; 5 Ann. 313; 27 Ann. 60; 31 Ann. 86; 18 Ann. 65.

2d.  In such a case the administrator of the succession is without right to demand from the purchaser the payment of the surplus in order to distribute same in course of administration. 30 Ann. 323; 34 Ann. 657; C. P. 707; 16 La. 170; 5 Ann. 306; 24 Ann. 381; 32 Ann. 325.

3d.  Payment to the sheriff or the administrator would not protect the purchaser, or abridge or affect the right of mortgage or privilege creditors to enforce their hypothecary rights against the property purchased by him. 34 Ann. 663; 2 R. 214; 31 Ann. 86; 16 La. 170; 5 Ann. 313; 18 Ann. 641–65.

4th.  The mortgages recorded against the property adjudicated to the purchaser can be erased only with the consent of the mortgagees, or by a final judgment rendered contradictorily with all parties in interest. 8 R. 97, 130; 8 Ann. 58: 21 Ann. 401; 2 Ann. 606; 29 Ann. 848; 34 Ann. 665; 2 La. 489; 11 R. 171; 6 R. 299.

The opinion of the Court was delivered by

POCHÉ, J.  This rule is taken by R. Beltran, administrator of the succession of J. Aristide Bourgeois, to compel the purchaser of the immovable property of the succession, at a sale made under executory process at the instance of plaintiff, Jean Tessier, to turn over to the administrator the balance of the purchase price after satisfying in full the seizing creditor's mortgage in principal, interests and costs.

Tessier vs. Bourgeois.

The mortgage thus foreclosed had been granted by J. A. Bourgeois three years before his death, which occurred in November, 1884, and executory process was issued in December, 1884, against the defendant, Pamela Bourgeois, individually and as tutrix of her minor children, issue of her marriage with the deceased J. A. Bourgeois.

The amount of the purchase price was $5,700, and the cash balance remaining in the hands of the purchaser is $2,869.05, which he claims the right of holding in order to apply the same to the payment of mortgages existing on the property subsequent to that of the suing creditor, in accordance with the provisions of Article 707 of the Code of Practice.

Before the rule was taken, three of the creditors of the succession had filed third oppositions on their respective claims urging a right of preference on said proceeds; one, the defendant herein, setting forth a legal mortgage for the restitution of her paraphernal funds, and the others claiming privileges as unpaid artisans and laborers.

Resisting the rule, the purchaser filed several exceptions which were overruled, and in his answer he took the position that he could not legally be compelled to part with the proceeds of the sale remaining in his hands until the adverse claims of the third opponents, mortgage and privilege creditors on the property which he had purchased and which was the only immovable property of the succession, had been judicially determined, and his property thus unburdened. He has taken this appeal from a judgment making the rule absolute.

We understand that the exceptions urged by the defendant in rule was abandoned on appeal excepting the objection that third opponents should have been made parties to the rule.

As the administrator of the succession is the special representative of all its creditors, it follows that the judgment rendered in the rule will be *res adjudicata* as to all of them. As the only object to be subserved by making these third opponents parties to the rule, is thus accomplished, the objection loses all force, and the exception is thus disposed of.

On the merits, the pivotal question hinges upon the nature of the mortgages which the purchaser sets up as the encumbrances of which he desires to relieve his property with the balance of his purchase price so as to be quieted in his title.

As shown by the third oppositions on file and not yet decided, these mortgages are general and not special mortgages, in the enforcement of which the creditors holding the same could not have proceeded by

executory process. But the mortgages which are contemplated by the Article 707 of the Code, the fundamental authority invoked by the purchaser, are " special mortgages existing on the property."

And in order to leave no doubt as to the legislative intent on the subject, the compilers of the Code have framed Article 710, which reads as follows :

" If there exist a general mortgage on the property resulting either from a legal or judicial mortgage, the purchaser cannot avail himself of this mortgage, although it be duly recorded, to retain part of the price for the purpose of paying it, or to refuse paying the price, if that has not been already done, unless there has been a suit commenced against him, in virtue of the general mortgage, to make him quit the property, or unless he has just reason to fear that such a step will be taken, in which case he may retain the price, unless the suing creditor shall relieve him from this disturbance, or give him proper security against it."

The two articles being construed together, lead to the conclusion that the purchaser's fears in the present case are ill-founded. We find nothing in the record to justify the slightest fear on the part of this purchaser of any hostile action by the holders of the general mortgages and privileges recorded against the property, calculated to disquiet him in his unencumbered title. On the contrary, the record discloses that those creditors are claiming payment by preference out of the very proceeds of his purchase, and that they are therefore thus judicially estopped from any future attempt to enforce their mortgage claims against the property.

The same estoppel would apply to the holder of the only special mortgage heretofore existing on the property, inferior in rank to that of the seizing creditor. That mortgage is held by the administrator who specially sets it up in his rule, and claims payment thereof out of the proceeds of the sale, as the next mortgage in rank after that of the seizing creditor, and hence he would likewise be forever estopped from claiming any mortgage rights against the property.

The record thus shows a *concursus* among all the creditors who could possibly urge any mortgage claim against the property purchased by the defendant in rule, who have all transferred their respective and adverse rights from the thing to the proceeds of the sale.

What harm can therefore befall this purchaser by paying over the price of his purchase ? Under the state of the pleadings he can easily obtain an order directing that all pre-existing mortgages affecting the

Tessier vs. Bourgeois.

immovable which he has bought be cancelled and erased. What can he ask beyond that protection?

These are the very rights which the law intends to secure him, by allowing him to retain the balance in his hands after paying the seizing creditor. The reason of the law having ceased, its application can no longer be invoked.

We have carefully examined and given due consideration to the numerous authorities, all decisions of the court, which the purchaser's counsel quote in support of his claim.

They each and all refer to cases in which the purchaser had to meet and deal with *special* mortgages, either anterior, concurrent or subsequent, and in which his title could have been jeopardized by those encumbrances in case he had unguardedly paid the whole of his purchase price either to the sheriff or to the succession representative Hence these authorities fail to bear him out in his contention. Pepper vs. Dunlap, 16 La. 170; Bank vs. Peters, 2 Rob. 214; Scott vs. Featherston, 5 Ann. 313; Quertier vs. Hill, 18 Ann. 65; Johnson vs. Duncan, 24 Ann. 381; Bank vs. Smith et al., 27 Ann. 60; Gally vs. Dowling, 30 Ann. 323; Bucos vs. Hernandez, 31 Ann. 86.

We note the great and very confident reliance which his counsel place in the case of Morris vs. Cain's Executors, 34 Ann. 657, which they hold up as absolutely sustaining their position in this case.

But it appears from that decision that the mortgages which the purchaser had to provide for were special mortgages, created by the same act whence the mortgage of the seizing creditor had emanated although of inferior rank.

It was in view of that condition of things, and with reference to the *special* mortgages then under discussion, that we used the following language, which is quoted by appellant as decisive of the issue which now concerns us: "The case would be different if, after the payment of the seizing creditor and retaining an amount sufficient to pay anterior, concurrent and subsequent mortgage and privilege creditors, there remained a balance of the price of adjudication; but it would be only to such balance that the executors could raise their claim."

The balance now in the hands of the purchaser in this case is precisely in the condition of the balance as described in that quotation.

It is now before the Court for distribution as *in concurso;* the proper place for its distribution is in the administration of the succession to which the fund belongs of right, and the administrator is the proper custodian thereof, for payment in due course of administration. Such were the conclusions of the district judge; they are supported by good law, and they have our sanction.

Judgment affirmed.