John D. Nix, Jr.

                                    No. 7900

         vs

Jos. Petrie & Co., Ltd.

February 21st, 1921.

X X The duty of the Sheriff under Article C.P. 679 to announce that the purchaser shall retain in his hands the amount of superior privileges and special mortgages is only a relative duty in the interest of the owner and of subsequent mortgages and not absolute and does not affect the validity or the sale —

John D. Nix, Jr.

  vs       No. 7900.

Jos. Petrie & Co., Ltd.

  Appeal from Civil District-Court, Hon. Porter
Parker, Judge.

     CHARLES F. CLAIBORNE, JUDGE.

  Plaintiff sues to annul a constable's sale to defendant for want of payment of the price.

  He alleged that he was the owner in possession of a property on Seventh, now Hickory, Street, No. 8705; that the defendants claim to be the owners of said property by virtue of a proces-verbal of a pretended sale made by the Constable of the First City Court of New Orleans which the defendants herein have caused to be registered in the Conveyance Office in Book 281 page 238; that said proces-verbal is in the following words:

   "Be it remembered that on the 19th day of April in the year of Our Lord 1915, and of the Independence of the United States of America, 139th year, by virtue· of a writ of Fieri Facias to me directed by the Honorable the First City Court for the Parish of Orleans, on the 10th day of March 1915, in the matter of Joseph Petrie & Co. vs Alexander Madison, No. 67,672 of the docket of said Court, and the publications and advertisements required by law having been duly made in the following manner, viz: in the Times-Picayune in English, and in the N. O. Bee in French, on the 19, 25, and 31 March, and 6, 12, 19 April 1915, I, James J. Egan, Deputy Constable of the First City Court of New Orleans, did at the hour of 11 o'clock A. M. repair to the main door of the New Court House Building on Royal Street between Conti and St. Louis Streets in the Second District of this City, and then and there, after having first announced in a loud and audible voice the terms and conditions hereinafter expressed and specified, I did expose for public sale, by auction, the following described property, which was adjudicated to the highest and last

230

bidder, to-wit: Joseph Petrie & Co., plaintiff in said
suit, for the price and sum of $535.00,

"then follows the description of the property"

Terms: Cash; the purchaser to make a deposit of ten per
cent at the moment of adjudication.

Thus done and closed the present proces-verbal of
sale, amounting to $535.00 on which the purchaser has
paid the sum of $53.50 at the moment of adjudication".

"Signed"      J. J. Egan
              Deputy Constable

Witnesses:

Jno. O'Leary  -  J. Albright

Registered October 11th, 1915.

The plaintiff averred 1o that

"there has been nothing registered showing an absolute
transfer of the above property to Petrie & Co.",

or 2o

"that the defendants made any further payments on account
of the purchase price of said property, other than the
original deposit of $53.50 -";

and he prayed for judgment ordering the cancellation of the in-
scription and for damages for slander of title.

The defendants denied that the plaintiff was the owner
of the property but averred, on the contrary, that they were the
owners of it, by virtue of the adjudication and sale described
in the above proces-verbal; and that they complied with the ad-
judication by depositing ten percent of the adjudication or the
sum of $53.50; that the plaintiff herein, John D. Nix, Jr., was
present at said sale and intervened to claim the proceeds of
sale; that the said John D. Nix, Jr. illegally opened the Suc-
cession of Alexander Madison on September 21st, 1915 and provok-
ed the appointment of an Administrator who

"stated under oath that said property was worth $400";
that said Succession proceedings are void for the reason that
Madison was not the owner of the property, that the property
was worth more than $400, and that the proceedings were in vio-
lation of law.

There was judgment in favor of plaintiff and defendants have appealed.

The plaintiff testified that his possession of the property began on October 15th, 1915, the day on which he bought it; that he exercised all rights of ownership over it, leased it, collected the rents, paid taxes, and water bills, and made repairs; that the property had been rented four and five dollars, but was now rented for seven dollars per month since he put a new roof upon it and made repairs about a year ago; that while he paid $400 for it, he had an offer of $850.00 to $900.00 from Mr. Huber which would have been accepted had it not been for the inscription of the proces-verbal; he had a vendor's privilege on the property for some $400.00.

Mr. Huber testifies that he offered $800.00 to Mr. Nix.

It was admitted that the record in the suit of Joseph Petrie & Co. vs Alexander Madison was withdrawn by the attorney for the plaintiff on the day the present suit was filed and that it has been lost or mislaid; that the suit of Joseph Petrie & Co. was for a claim of $63.00 secured by privilege for plumbing done on the property; that the judgment was correctly rendered for the amount claimed with privilege on the property; that a Fi.Fa. issued; that the property was seized, advertised for sale and adjudicated to defendant for $535.00 cash, all according to law, and that defendant paid the Constable ten per cent of the adjudication; that the plaintiff herein was present at the adjudication and bid on the property; that on April 19th, 1915, he filed a rule in said suit claiming the proceeds of sale by virtue of his vendor's privilege superior to that of Petrie; and that the rule was dismissed on an exception to the citation.

The plaintiff offered in evidence the record in the Succession of Alexander Madison; it was admitted that the opening of the Succession and all proceedings therein leading to the sale were done at the suggestion of the plaintiff Nix. This record shows: that Alexander Madison, colored, died May 16th, 1915 on the property involved in this suit; that his Succession was opened by the Public Administration on September 21st, 1915 under Act 153 of 1900 on the allegation that the property left by

232

the deceased did not amount to over $500.00, and the property No. 8705 Hickory was appraised at $400.00. The Act 153 provides that an Administrator shall be appointed after one publication and posting on the door of the Court House and a delay of seven days; that the immovable property shall be sold after two weekly advertisements, all the costs up to and including the advertisements not to exceed $10.00. The Administrator was appointed on October 4th, 1915; on October 6th, without any statement of debts, the Administrator obtained an order of sale of the property of the Succession by the Sheriff, for cash, in order to pay debts; the property was advertised on October 7, 8, and 14th, and was adjudicated on that last date to the plaintiff herein for $400.00, cash, which he paid to the Sheriff, who paid the taxes and costs of sale, and the balance $355.37 to the Public Administrator. On November 19th, the Administrator filed an account. After paying costs amounting to $74.93, he proposed to pay to the plaintiff herein, as "holder of first mortgage note" all the balance amounting to $280.44; and he classed as "ordinary creditors, Joseph Petrie & Co., as per statement furnished by the Constable, $154.51". This account was homologated, without opposition, on December 2d, 1915. On October 18th, the Sheriff delivered to the plaintiff an act of sale. According to the mortgage certificate, copied in this act of sale, the following inscriptions were recorded: January 6th, 1914: The one Alexander Madison granted in favor of his vendor L. T. Kirn to secure $400 by act Deibel, N. P., dated January 3d, 1914; January 11th, 1915. The lien and privilege in favor of Joseph Petrie & Co. up to $63.00 by act T. Cotonio, N.P., dated March 4th, 1914; March 12th, 1915: the writ of Fieri Facias in favor of Joseph Petrie & Co. against Alexander Madison up to $63.00 & c. And according to the Conveyance Certificate recited in the same act there was the following inscription:

"Proces-verbal of Constable 1st City Court dated April 19th, 1915 to Joseph Petrie & Co. for $535.00 Bk. 281 folio 238 Registered October 11th, 1915".

It will thus be seen that this property was adjudicated to the defendant on April 19th, 1915, and a procès-verbal of sale

233

made to him of same date, and registered in the Conveyance Office on October 11th, 1915. On the other hand, the adjudication in the Succession of Madison was made to the plaintiff on October 14th, 1915, three days after the registry of defendant's proces-verbal.

It is contended, however, that this proces-verbal was not an "absolute transfer of the above property to Petrie & Co." This contention is not supported by law or authority. Article 690 of the Code of Practice reads as follows:

"The adjudication thus made has, of itself alone, the effect of transferring to the purchaser all the rights and claims which the party in whose hands it was seized might have had to the thing adjudged".

C. C., 2608 (2586)

"This adjudication is the completion of the sale; the purchaser becomes the owner of the article adjudged, and the contract is, from that time, subjected to the same rules which govern the ordinary contract of sale".

Article 691 prescribes that the Sheriff shall pass an act of sale to the purchaser.

Articles 692 and 693 state what the act of sale shall contain.

Article 694 directs the Sheriff to sell to the purchaser all the rights of the debtor to the thing sold.

Article 695 concludes:

"This act of sale adds nothing to the force and effect of the adjudication, but is only intended to afford the proof of it. Consequently, if the Sheriff has omitted any of the formalities above prescribed, the adjudication shall not be void on that account, if it otherwise appear that it was made by virtue of a legal authority, and with all the forms requisite for its validity".

The Proces-verbal to the defendant contains all the requirements of the above articles of the Code; and if it did not, it would still be valid as affording the proof of an adjudication "made by virtue of a legal authority, and with all the forms requisite for its validity".

234

Such was the view taken of the force and effect of a "Proces-Verbal" in the case of Strauss vs Soye, 29 A., 270. The Court said:

"No evidence was offered by the defendant, and he relies on a supposed incompleteness of the Sheriff's conveyance to plaintiff alleging that there must be a deed from the Sheriff supplemental to the Proces-Verbal. The Proces-Verbal of the Sheriff in evidence fulfills all the requirements of the Code of Practice (Articles 692-693) and is of itself a deed. It contains all the necessary recitals, and is signed by the Sheriff and the purchaser, whose signatures are attested by two witnesses".

In the case of Bienvenu vs Insurance Co., 33 A.,216, the Court said:

"Appellant further urges that plaintiff has failed to produce the Sheriff's deed to him. x x x We find in the record the Sheriff's return on the writ of fi. fa., showing his adjudication to plaintiff, and that is sufficient. 29 A., 270."

The delivery of an act of sale by the Sheriff is a clerical duty; the want of it will not annull the sale. 27 A., 281.

The second contention of plaintiff is equally untenable, viz:

"that there is nothing to show that the defendants have made any further payments on account of the purdhase price of said property, other than the original deposit of $53.50, and that, inasmuch as the terms of sale were "cash", the defendants had no title until they had paid the constable the entire price of adjudication."

Such is not the law or jurisprudence.

The Code or Practice, Articles 679, 683, 706, and 718 provides, that when there exist special mortgages or provileges in favor of other persons superior to the judgment creditor, the purchaser shall retain in his hands an amount sufficient to satisfy them. The same rule applies to special concurrent mortgages; and Article 707 of the Code of Practice makes it the duty

of the purchaser, after paying the seizing creditor, to apply the surplus in his hands to the payment of inferior mortgages. The jurisprudence is constant that the seizing creditor, purchasing at a Sheriff's sale is not bound to pay any part of the price to the Sheriff. He has a right to keep the portion of the price due to himself and he is bound to retain in his hands the amount belonging to special mortgage or privileged creditors. The jurisprudence is *also* constant that the purchaser has a right to pay to the Sheriff, and the Sheriff has a right to receive, only the amount of the writ in his hands. So it is immaterial in this case, whether the plaintiff's claim was superior or not to the defendant's upon the property seized. Petrie & Co., as seizing creditors, had no part of the adjudication to pay; and they were bound to retain in their hands, as the Sheriff had no right to receive it, the amount accruing to special mortgage creditors superior, concurrent, or inferior.

The property was adjudicated to Petrie on April 19th, 1915; Madison died on May 16th, 1915; they could not pay him; and there is no evidence that the plaintiff called upon them to pay, after their unsuccessful rule.

Plaintiff, as seizing creditor with mortgage or privilege has a right to withhold the price of adjudication up to the amount of his claim. 34 A., 1032 (1037); 25 A., 144; 1 A., 144.

A purchaser at Sheriff's sale to satisfy a writ has no right to pay to the Sheriff and the Sheriff has no right to receive an amount exceeding his writ. 34 A., 663; 107 La., 313; 25 A., 313; 2 R., 214; 39 A., 735.

If the purchaser pays the Sheriff more than the amount of his writ he does so at his peril and the Sheriff's security will not be liable. 34 A., 663; 107 La., 313; 31 A., 87; 15 A., 289; 2 R., 214; 16 La., 163.

Although the sale is made for cash, the seller must retain an amount of the price sufficient to pay special prior mortgages. C. P., 706; 107 La., 313; 34 A., 662; 31 A., 87; 15 A., 289; 14 A., 149; 9 A., 175; 58; 2 R., 215; 39 A., 735; 10 R., 110, 65; 1 R.,305; 1 N. S., 603.

236

"The adjudication shall be for cash. This does not preclude the purchaser from retaining the surplus of the purchase price, if any there be, to pay the mortgage second in rank". 44 A., 336, 337.

The Sheriff has no right to receive the amount accruing to an inferior mortgage creditor. 18 A., 67; C. P., 707; 15 A., 289; 5 A., 313; 16 La., 170; 3 La., 212.

The purchaser must also retain in his hands the amount of concurrent mortgages. 107 La., 311; 24 A., 381; 34 A.,663; 39 A., 1056, 1057, 735; 21 A., 499; 14 A., 149; 5 A., 313.

Prior and concurrent mortgages are governed by the same law. 14 A., 654.

There is nothing in the record to show that Petrie & Co. were aware that the Succession of Madison had been opened, or that their property was advertised for sale, or had been purchased by the plaintiff, or that he was in possession of it, or had repaired or improved it.

We have therefore come to the conclusion that the Proces-Verbal to the defendants conferred upon them a complete title to the property adjudicated to them; that from that date the property ceased to belong to Madison, and that the sale of it in his Succession was "the sale of a thing belonging to another" and therefore null. C. C., 2452 (2427).

It is therefore ordered, adjudged, and decreed, that the judgment appealed from be reversed and annulled, and that plaintiff's demand be rejected at his cost in both Courts.

Judgment reversed.