WALTON & KEMP *vs.* LIZARDI ET AL.

APPEAL FROM THE PARISH COURT, FOR THE PARISH AND CITY OF
NEW-ORLEANS.

The purchaser of a specific, but undivided, portion of a square of ground,
for a particular sum or price, and gives his obligations with mortgage
to secure payment, this mortgage only *extends to his portion or interest.*
and cannot be enforced, in the executory proceeding, for any of the
obligations of his co-purchasers, although the sale and mortgage is all
included in one and the same act.

It was the intention of the parties to acquire such distinct portions of the property conveyed as might have been made the subject of separate deeds of sale, and that, although undivided, the square of ground cannot be said to have been purchased in common; and the payment of the notes of any one purchaser, extinguishes the mortgage as to his part, and gives him an absolute and distinct title.

Although a mortgage is indivisible, and prevails over each and every portion of the property, yet when the obligations given for a part, only, of the whole property, are paid, the mortgage being but the accessory is extinguished.

So, where co-purchasers of distinct and separate portions of undivided property, and jointly mortgage it to secure payment of the price, yet when any one pays for his portion, the mortgage is extinguished as to that part.

This suit commenced by injunction. The plaintiffs show that in July, 1837, they purchased one undivided eighth of a square or islet of ground in New-Orleans, paid part of the price in cash, and for the balance gave their notes, which they paid at maturity.

They further allege, that their co-purchasers of the remaining portions of said square, failed to meet their engagements, and that judgements have been rendered against them, and executions issued, which have been levied on the whole property, including their portion, which is advertised for sale. They pray for an injunction to stop said sale, and that Lizardi, Hermanos, and the sheriff, be perpetually enjoined from selling their eighth part, which they show is in no way liable to the mortgage of said Lizardi, Hermanos.

The defendants aver, that the injunction has been wrongfully sued out; that the whole property is mortgaged to secure as well the purchase price of the portion or interest of the plaintiffs as that of their co-purchasers; that such was the intention of the contracting parties at the time the act of sale was passed; and such is the true intent and meaning of the special clause to that effect in the deeds passed concerning the sale to the plaintiffs and their co-purchasers.

Upon these pleadings and issues the cause was tried.

The facts of the case show that this square, or islet of ground, belonged to Lizardi, Hermanos, and that, by agreement with certain persons, it was sold out by shares or distinct portions, to several purchasers, the interest of each being particularly specified and designated, but the property, or square, remained in a state of indivision. Each party purchased his distinct interest for a specific price, which was liquidated by part cash payments and notes given. The act of sale included all the purchasers, but specified each one's separate share or portion, both of the property and the price, and mortgage was retained and acknowledged by each set of purchasers on his portion or share, to secure payment. The plaintiffs had paid off the amount of their purchase, but some of their co-purchasers failed, and the Lizardis (original proprietors,) were proceeding against the whole property for this default; when both they and the sheriff were stopped by the plaintiff's injunction.

There was judgment perpetuating the injunction, and the defendants appealed.

*L. Peirce,* for the plaintiffs and appellees.

1. The only question in this case is, whether it was the *intention* of the purchasers, that their several portions were to be mortgaged for the debts of each other. This is certainly not to be presumed, and must be fully shown, not by severed expressions, but by reading the whole agreement, and construing such expressions by the context.

2. It seems from the first act, that Lizardi, Brothers were in possession of a square of ground, containing fourteen lots, which three persons were desirous of purchasing on a speculation; their intention was, to make a new division of the square and plan, and sell it out into lots on credit. In consequence, they transacted with Lizardi, Brothers, as follows: They paid to the latter ten thousand dollars, and took their obligation that they (the Lizardis) should make the titles themselves, in favor of the persons who should hereafter

EASTERN DIST.
June, 1840.

WALTON & KEMP
vs.
LIZARDI ET AL.

become purchasers, and should retain from the proceeds of the sale which shall be made of the said square of ground in different lots, the notes accruing from the said sale, to the amount of fifty thousand dollars, giving to the Lizardis the choice of notes, and binding themselves to cause the said notes to be endorsed to their satisfaction; the payment of which notes was to be secured by special mortgage on each of the lots, for which the same shall be given in payment. But if in case Baldwin, Cash and Alling, should wish to hold the property in their own name, and not divide it into lots, then Lizardis were to sell directly to them; they giving their notes endorsed to the satisfaction of Forstall, the agent of Lizardis.

3. Now, so far as this agreement conveys their intention, it evidently was not in contemplation of the parties, that a mortgage on the *whole* square was to be made for each share; for Forstall agrees to divide that which his counsel now thinks indivisible. The mortgage, in case of sale in lots; and if in case of the sale of the square without lots, he stipulates for *their notes endorsed to his satisfaction,* without a word about the mortgage.

4. Let us see what he means by their notes endorsed to his satisfaction; for if we find him in the execution of this agreement, selling the square to them, and requiring that each note should be signed by *all three,* and endorsed by some *fourth* person, we will believe that he required a mortgage on the whole square for each and every portion. But, far otherwise, for in the agreement he takes from each one his name alone, with *endorser*: so that again he shows that he never considered that they were intended to be bound jointly and severally.

5. The obligation contracted by the purchasers is a joint obligation, but not *joint* and *several.* Solidarity is never presumed, and here there is no leaning to it. They mortgage the property conveyed to them, as it has been conveyed to them, which has been to each for *his proportion of interest*; they never dreamed that their proportion of interest was to be the pledge of another man's debt.

*Grima,* for the defendants and appellants :

1. The defendants contend that there is error in the judgment of the Parish Court, ordering the injunction obtained by the plaintiff in the above entitled suit, to be made perpetual, on the ground that from the whole contents of the act produced, the intention of the parties never was that the whole of the property should be mortgaged to secure the payment of the notes given in payment of each individual share.   The plaintiffs in injunction did, by becoming purchasers by the deed of sale, passed on the 22d July, 1837, put themselves in the lieu and place of William Alling, one of the original purchasers, by virtue of the agreement between them and the defendants, and did assume the responsibilities to which the said William Alling was subject.   By that agreement, the mortgage was to be divided only in case the property should be divided and sold into lots, in conformity with, and within the delay determined in the said agreement.   But the division and sale into lots did not take place, and the whole property was sold to Joshua Baldwin, Thomas C. Cash, George Olden and Walton & Kemp, each in the proportion of interest stipulated in the deed of sale of the 22d July, 1837.

2. By our laws, *Louisiana Code, article* 3249, the mortgage, which is a legal right on the property is in its nature indivisible and prevails over all the property subjected to it, and over each and every portion thereof.   The mortgage cannot, therefore, be divided in a deed of sale, wherein the vendor generally reserves his right of mortgage against the property conveyed, unless such division be expressly stipulated in the conveyance.   In the deed of sale of the 22d July, 1837, no stipulation to that effect can be found, nor can it be inferred from the clause reserving the mortgage. The purchasers declare that, "*in order to secure the payment of the notes subscribed by them, by virtue of said act and amounting together to the total sum of fifty thousand dollars, they jointly affect, mortgage and specially hypothecate the property conveyed,* &c.   Can this mean that each of the purchasers does separately mortgage his undivided portion.   If such had been the intention of the parties, the specific portion of each purchaser

should have been described, and specially and separately mortgaged. The contrary intention of the parties results from the same clause, whereby the purchasers, each in pro- portion of their respective share and interest in said property, confess judgment in favor of the vendors, in the sum of fifty thousand dollars, and whereby the vendors *expressly reserve to themselves the right and privilege, in case of non-payment of any of the aforesaid promissory notes, at the respective periods of maturity thereof, to cause the said described premises, to be seized and sold by executory process.*

3. The reservation expressed in this clause appears to me to be conclusive of the intention of the parties, that the mortgage was not to be divided, and that in case of non-payment *of any of the notes of the purchasers,* the legal right of the mortgagees was reserved on the whole of the property. (*The said described premises,*) as *described in the deed of conveyance,* and bound for the discharge of all and each of the obligations furnished for the consideration.

*Simon, J.,* delivered the opinion of the court.

The plaintiffs state, that on the 22d of July, 1837, they purchased of the defendant one undivided eighth part of a square or islet of ground, in the suburb Annunciation, designated as No. 66 on the plan made by Lafon, and comprising fourteen lots ; that they paid their proportion of the cash amount stated in the act of sale ; that for the balance they furnished four several promissory notes, to the order of a third person who endorsed them ; and that the said notes having all been paid at maturity, they owe nothing on the price or consideration of their purchase. They further allege, that their co-purchasers of the other seven-eighths having failed to meet their engagements and pay their notes, judgments were rendered against them in favor of the defendants ; and that, executions having issued, they have caused the whole square, including the plaintiff's portion, to be seized and advertised for sale, by virtue of the mortgage. They also allege, that it was not their intention to become bound for the debt of their co-purchasers ; nor that the

interest, by them acquired in the property, should remain mortgaged to secure the debts of other persons, with whom they had no connection ; and that their undivided eighth of the square purchased is now free from all mortgage, and cannot be seized and sold.    They made the sheriff a party to the suit, and obtained an injunction ; which, after issue joined by defendants, in which they seek to maintain their right of mortgage to the whole square of ground, to secure the price thereof; according, as they state, to the true intent and meaning of the clauses and stipulations contained in the deed of sale, was made perpetual.    From this judgment the defendants appealed.

The evidence shows, that in December, 1836, the defendants' agent entered into a written agreement, under private signature, with several individuals, to sell them the property in question for sixty thousand dollars, of which ten thousand dollars were to be paid in cash ; to have it divided into lots, and to permit the same, so divided, to be exposed for sale, afterwards, in the name of the defendants, on condition that the choice of the notes accruing from the sales, and satisfactorily endorsed, should be given to the defendants in payment of the balance due them on the original price ; and it was also agreed and understood, that " *the payment of the notes should also be secured by special mortgage on each of the lots for which the same should be given in payment ;*" and, further, that if the then purchasers wished to hold the property in their own names, the sale should not be made in lots, but that the whole should be conveyed and transferred to them by a regular notarial act, to be hereafter executed on their furnishing to the vendors their separate notes, satisfactorily endorsed, to the amount of the said balance payable in four equal instalments.

On the 22d of July, 1837, the parties appeared before a notary and executed a regular deed of sale, based on the written agreement under private signature, and nothing was changed in its disposition except that the property, not being any more subject to be exposed for sale in the manner provided for, was absolutely conveyed, in distinct portions, to the

EASTERN DIST.
June, 1840.

WALTON & KEMP
vs.
LIZARDI ET AL.

original purchasers; and that the plaintiffs and another person having been substituted to one of the first contracting parties, the said plaintiffs became the purchasers of one undivided eighth part of the square, paid their share of the cash, and, for their proportion of interest, furnished their separate notes, satisfactorily endorsed, and countersigned, *ne varietur*, by the notary.

In relation to the mortgage, we find in the act the following stipulations: "*And in order to secure the full and punctual payment of the above described promissory notes, they jointly, affect, mortgage and hypothecate, &c. &c.;* which clause, being preceded by, " *and for the balance, to wit : $50,000, &c. &c.,* said purchasers have produced and furnished in their respective proportions of interest in the purchase of said property, the following promissory notes,* &c. &c.," is followed by, " *and the said purchasers, each in the proportion of their respective shares and interest in the said property, do hereby confess judgment, in favor of the said vendors, for the aforesaid sum of $50,000;*" and, further, " *the said vendors, reserving to themselves the right and privilege, in case of non-payment of any of the aforesaid promissory notes, at the respective periods of maturity thereof, to cause the described premises to be seized and sold by the executory mode of proceeding,*" &c. ; and it is also necessary to remark, that the proportion of the respective shares and interest of the purchasers, is previously established, thus : " *Now the said parties do hereby agree that the sale of the said square of ground shall be made in favor of,*" &c. &c., " *in the following proportions,*" &c.

From the particular care which the parties appear to have taken to distinguish their proportion of interest in the property sold, in payment of which they respectively gave their separate obligations, endorsed by different endorsers, it seems to us that it was their clear intention to acquire such distinct portions of the property conveyed, as might have been made the subject of separate deeds of sale to each of them respectively; and that, although undivided, the square of ground cannot properly be said to have been purchased in common. Solidarity is never presumed ; and here, far from there being any

The purchaser of a specific, but undivided portion of a square of ground, for a particular sum or price, and gives his obligations with mortgage, to secure payment, this mortgage only extends to his portion or interest, and cannot be enforced in the executory proceeding, for any of the obligations of his co-purchasers, although the sale and mortgage is all included in one and the same act.

It was the intention of the parties to acquire such distinct portions of the property conveyed, as might have been made the subject of separate deeds of sale, and that, although undivided the square of ground cannot be said to have been purchased in common ; and the payment of the notes of any one purchaser extinguishes the mortgage as to his part, and gives him an absolute and distinct title.

clause from which the least presumption of solidarity could arise, it is expressly understood that each of the parties is purchasing a distinct proportion of the square, unconnected with the others, though yet undivided, and for the payment of which proportion of interest, he becomes distinctly obligated. Under this view of the contract, it is perfectly clear that the intention of the parties was not to become bound for each other, nor as the security of each other; and that the payment of his notes by one of the purchasers, was to be a sufficient extinguishment of his obligation, and gave him an absolute title to the portion by him acquired free from the vendor's mortgage and privilege; and if so, we are unable to see any good reason why, on producing the notes duly receipted and certified according to law, to the recorder of mortgages, he could have refused, if an application had been made to him, to erase or enter a release of the mortgage reserved for the security of said notes.

But it is contended, that although under the contract, the obligations of the purchasers to pay the price may have been

Although a mortgage is indivisible, and prevails over each and every portion of the property, yet when the obligations given for a part, only, of the whole property, are paid, the mortgage being but the accessory, is extinguished.

distinct and separate, still, the mortgage and privilege reserved to secure the payment of said price, prevails over each and every portion of the property conveyed and subjected to it; and that in order to limit the exercise of such mortgage, there ought to have been an express stipulation. It will be conceded, however, that the mortgage is only an accessory to the principal obligation, and that the extinguishment of such principal obligation, operates the release of the mortgage. *Louisiana Code, articles* 3251, 3252. If so, how can the defendants insist on preserving their right of

So, where co-purchasers of distinct and separate portions of undivided property, and jointly mortgage it to secure payment of the price, yet when any one pays for his portion, the mortgage is extingued as to that part.

mortgage on every portion of the property conveyed, after having been paid off the amount of the price of any one of those portions? The principal obligation in this case is in the nature of a joint one, and so is the mortgage, as it clearly results from the express clause, that "*the purchasers jointly affect, mortgage,*" &c.; and it is a well known rule, that "*several obligations,*" although created by one act, have no other effect than the same obligations would have had, if made by separate contracts. *Louisiana Code, article* 2079.

It is true, that the mortgage is in its nature indivisible and is a legal right on the property, bound for the discharge of the obligation. *Louisiana Code, article* 3249. But it is also true, that this legal right ceases and is necessarily destroyed, after the obligation has been satisfied ; and that as in this case, if the parties had expressly mortgaged the whole square, they could not have divided it without the consent of the mortgagees ; so, the purchasers could not have subdivided their respective portions without the consent of the defendants. The clause which provides for the seizure and sale of the described premises by executory process, cannot be understood in any other manner but in reference to the previous stipulations ; and its only meaning is, that in case of non-payment of any of the promissory notes (given by each of the purchasers for his proportion of interest) the premises should be seized and sold in proportion to the parties' previously described and respective interest. On the whole, it is impossible for us to conclude that the plaintiffs ever intended that after satisfying their distinct and separate obligations, their undivided portion of the square should remain obligated and mortgaged to secure and pay the debts of their co-purchasers. To give this effect to the act, an express stipulation was undoubtedly necessary. We are of opinion that the parish judge did not err in making the injunction perpetual.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be affirmed, with costs.