No. 3208.—STEWART, HYDE & CO. *v.* MADAM SUZETTE BUARD.

Where five parties own a tract of land in common, and all agree to sell and do sell and transfer it to one person, and the vendee gives his notes to each one for their respective shares of the land, and all the vendors join in the sale in one act, in which act of sale it is expressly stipulated that a mortgage is retained on the whole property as security for the payment of each one of the notes, and the vendee makes retrocession of four of the five shares of the tract of land to four of the vendors, then, and in that case, the third holder, before maturity, of the notes given to the fifth vendor for one-fifth interest in the land may enforce his mortgage rights against the whole tract of land first conveyed without reference to the retrocession.

If it be stipulated in a contract that in case the obligation is discharged in United States treasury notes, it shall be in the proportion of one dollar and thirty cents in currency for every dollar expressed on the face of the obligation, the proper decree and judgment is to reserve to the maker of the notes the option to discharge the obligations in gold. A decree that the defendant be ordered to pay in currency with thirty per cent. additional is incorrect, because at the time of payment the price of gold might be less than thirty per cent. premium.

APPEAL from the Ninth Judicial District Court, parish of Natchitoches. *Orsborn,* J. *Clark, Bayne & Renshaw* and *Chaplin & Son,* for plaintiffs and appellees. *Pierson & Levy,* for defendant and intervenor, appellant.

LUDELING, C. J. The plaintiffs sue the defendant, Suzette Buard, on two promissory notes, each for fifteen hundred dollars, with eight per cent. per annum interest from maturity and due respectively on the first of February, 1868, and first of February, 1869. They allege that, by a written contract, it was stipulated that if the notes be paid in United States treasury notes, it should be in the proportion of one dollar and thirty cents in currency for every dollar expressed on the face of the note. They allege that the notes were transferred to them before maturity as collaterals according to law; that the notes are secured by a mortgage on certain property described in an act of sale, to be found in the record; and they pray for judgment against

the defendant for $3900, with interest at the rate of eight per cent. per annum from maturity of the notes; and they further pray for the recognition of their mortgage on all the property before mentioned.

J. E. Buard et al. filed an intervention in this suit. They allege that they and L. A. Buard were the owners of all the property claimed to be mortgaged to the plaintiffs, on the nineteenth day of March, 1866; that they inherited the property from their father, L. A. Buard, and each owned an undivided fifth of the whole property. That on the nineteenth of March, 1866, they joined in an act by which they sold and transferred to their mother, Suzette Buard, their interests in the property in consideration of her executing her notes, in favor of each heir for the sum of six thousand dollars. That on the nineteenth day of June, 1867, their mother being then unable to pay the notes given for the price of the property, and the future payment by her being hopeless, retroceded by public act the aforesaid property to all the vendors. They aver that by this act they were reinvested with their interests and ownership in the property, and that all the notes, except those payable to L. A. Buard, Jr. (of which those sued upon form a part), were surrendered and canceled. They allege that the plaintiffs knew when they took the notes from L. A. Buard, Jr., the extent of their mortgage security, and the interest of L. A. Buard in the property. They further aver that the interest of L. A. Buard in the property is alone liable to the mortgage given to secure the notes sued on. They resist the plaintiffs' demand to have their property sold under the mortgage. There was judgment in favor of the plaintiffs, and the defendants and the intervenors have appealed.

On the trial of the cause the intervenors offered witnesses to prove the inability of Suzette Buard, to pay for the property sold to her; and that the plaintiffs knew the extent of their mortgage and of the interest of their transferrer in the property sold, for which the notes sued on were given. The plaintiffs objected on the grounds that the evidence was irrelevant, and was intended to modify or explain by parol the written contract, which objections were sustained by the court, and the intervenors took a bill of exceptions to the ruling. The testimony was not offered to contradict or explain the authentic acts; but to prove facts, first, which occurred after the making of one act, and second, facts which showed the necessity for making the other act. The objection of irrelevancy is very weak, and although in this case, under the pleadings, there was no necessity to prove the inability of the buyer to pay the price, yet we can see no good reason to prevent the parties from proving the fact, to show their good faith. In Chretien v. Richardson the court held that "when a contract has been rescinded extra judicially, or by a consent decree, the *onus* of proving the necessity devolves upon the party who claims the benefit of the

resolution." 6 An. p. 6; 7 An. 135. The testimony should have been received.

From the evidence in the record, it appears the notes sued on were executed in favor of one of the five heirs of L. A. Buard, to wit: To L. A. Buard, Jr., and that he had pledged them to the plaintiffs. The notes were given by Mrs. Buard in consideration of the abandonment of all claims against the estate of A. L. Buard, deceased, and the transfer and sale of all his right and interest to all the property of the succession to his mother. For a similar purpose she had executed like notes to the other heirs of the succession. These different stipulations by the mother in favor of the five several heirs of her husband in consideration of the sale of their respective rights in the succession of their father, were contained in one act passed on the nineteenth of March, 1866. In this act the vendor's privilege was retained, as well as a mortgage upon the property sold. What are the rights and obligations growing out of this act? The plaintiff insists that it conferred on the holder of each note the right to enforce the mortgage to pay his debt against all the property, notwithstanding the rescission of the sale for the non-payment of the price. We can not give our assent to this proposition.

Article 2079 of the Civil Code declares that "several obligations, although created by one act, have no other effect than the same obligations would have had if made by separate contracts; therefore they are governed by the rules which apply to contracts in general." In the act already referred to Mrs. Buard bound herself to pay thirty thousand dollars for the property of the succession of L. A. Buard, and she gave her separate obligations in favor of each of the five heirs for six thousand dollars thereof—being for his share of the property.

Article 2073 says that "several obligations are produced, when what is promised by one of the obligors is not promised by the other, but each one promises for himself to do a distinct act; such obligations, although they may be contained in the same contract, are considered as much individual and distinct as if they had been in different contracts, and made at different times."

Article 2074 declares: "In like manner, a contract may contain distinct obligations to perform different things in favor of several persons; the obligations in this case are several and unconnected, and each obligee has his separate and distinct remedy on the obligation created toward him." Construing the contract of the nineteenth March, 1866, in accordance with these articles of the Civil Code we are not left in doubt as to the rights and obligations which spring from it

The contract contains distinct obligations to perform different things in favor of several persons; that is, the purchaser obligated herself to pay to the several persons who had sold their interests in the property,

the price of their property severally. The obligations are several and unconnected, and " each obligee has his separate and distinct remedy on the obligation created toward him"—in the same manner as if the obligations had been in different contracts, made at different times. 15 La. 596, Walton & Kemp *v.* Lizardi et al; 5 Rob. 73, Erwin *v.* Green et al.

What then was the remedy that each seller had on the obligation created in his favor under the contract of nineteenth of March, 1866? In the language of article 2539 of the Civil Code, we answer: " If the buyer does not pay the price, the seller may sue for the dissolution of the sale." 10 Rob. 416; and " Whenever a necessary cause of resolution exists, the purchaser may do voluntarily what he can be compelled to do by suit." 6 An. 6; Chretian *v.* Richardson; Shields *v.* Lafon, 7 An. 135.

This remedy was exercised by favor of the vendors. What was the effect of the resolution of the sale, on the mortgage given to secure the price of the interest of L. A. Buard, supposing that the mortgage extended over any other part of the property beyond what he sold?

Article 3268 of the Civil Code provides that " such as only have a right that is suspended by a condition, and may be extinguished in certain cases (in the French text, *ou résoluble dans certains cas, ou sujet à rescision)* can only agree to a mortgage subject to the same conditions and (or) liable to the same extinction." The title of the vendee was never indefeasible, and the title given by her to her creditor was liable to become extinct by the happening of the resolutory condition. 8 La. 83, Mortee *v.* Roach's syndic; 12 An. p. 700, Johnson *v.* Bloodworth.

The contract between Mrs. Buard and her five children stipulated that if the notes given by her were paid in United States treasury notes it should be in the ratio of $130 in currency for every $100 specified in the notes. The judgment against her is for the amount specified in the notes with thirty per cent. added thereto. This is erroneous. The maker of the notes should have had reserved to her the right to pay in gold, if she pleased. There is no certainty that gold will not be worth less than thirty per cent. premium when she is compelled to pay.

It is therefore ordered that the judgment of the district court be avoided and reversed. It is further adjudged and decreed that there be judgment in favor of the intervenors restraining the plaintiffs from selling their undivided four-fifths interest in the property mortgaged ; and that there be judgment in favor of the plaintiffs against madam Suzette Buard for the sum of three thousand and nine hundred dollars, with interest at the rate of eight per centum per annum on nineteen hundred and fifty dollars from the first day of February, 1868, and on nineteen hundred and fifty dollars from the first day of February, 1869.

till paid, and costs. And the right is reserved to Mrs. S. Buard to discharge this judgment by paying three thousand dollars in gold, with eight per cent. per annum interest on one-half thereof from the first February, 1868, and on the other half from the first of February, 1869, till paid, and costs. And it is further ordered that the mortgage given by the defendant on the property described in the petition and act of mortgage be recognized and enforced against the undivided interest of L. A. Buard, being one-fifth in and to the property aforesaid, to satisfy this judgment.

It is further ordered that the plaintiffs and appellees pay the costs of the intervention and of this appeal, and that the defendant, S. Buard, pay the other costs, incurred in the district court.

WYLY, J., dissented.

## ON REHEARING.

WYLY, J. On the nineteenth day of March, 1866, the five heirs of L. A. Buard joined in an act conveying to their mother their respective interests or shares in a certain plantation inherited by them from their said father, and in order to secure the price represented by certain promissory notes in favor of the vendors respectively, the said vendee specially mortgaged all of the said property "in favor of the payees of said notes or their assigns until the full and complete payment of the same, principal and interest." Certain notes coming to one of the heirs were, before maturity, pledged to the plaintiffs; and when the pledgees instituted this suit against madam Buard to recover a personal judgment on the notes and to enforce the mortgage, the other four heirs intervened and ask that the mortgage be only recognized and enforced on one-fifth of the property embraced in the act of mortgage, the same being the share conveyed to the said madam Buard by the heir who assigned his notes to the plaintiffs and upon which alone the mortgage sought to be enforced operates; they allege that the other four-fifths of the property was reconveyed to them in consequence of the inability of their said mother to pay for the same; that this retrocession having the same effect as the enforcement of the dissolving condition restored the undivided four-fifths of the said property to them free of the incumbrance resulting from the mortgage; and by this act the mortgage sought to be enforced by the plaintiffs is restricted to the share of the heir from whom they acquired the notes.

There is no doubt that the effect of the dissolving condition is to discharge subsequent mortgage, granted by the vendee to third parties. But in the case before us the intervenors and plaintiffs' transferrer were the vendees and mortgagees; they were parties to the mortgage and consented to the following clause in the mortgage.

granted by their vendee: "All of the said property to be and remain specially mortgaged in favor of the payees of said notes or their as-. signs, until the full and complete payment of the same, principal and interest."

By this stipulation the notes coming to each heir was not only secured by the interest or shares which he conveyed, but was secured by a mortgage on the whole property granted by the vendee with the consent of all the five vendors.

There is no doubt that the purchaser had the right with the consent of all the vendors to mortgage all the property to secure each note given to the several vendors, and having done so the holders of the notes acquired concurrent mortgage rights on all the property. There is no doubt that several distinct sales and mortgages may be embraced in the same act; and in the act of sale and mortgage before us it was perfectly competent if the parties had so desired for the vendee to secure the debt due each heir by a separate mortgage on the share conveyed by him; and in that case each heir could assert his rights against the delinquent vendee by a suit to enforce the mortgage, or by a suit to dissolve the sale, as to him might be most desirable, and the other heirs would not be affected thereby, or have any interest in the remedy resorted to.

But in the case before us the parties in interest consented by signing the act of mortgage that the vendee should hypothecate the whole property to secure each note, thereby the holders of the several notes acquired concurrent mortgage rights on the whole property.

Now, if the notes declared on were secured by mortgage on the whole property the day the mortgage was given by the vendee and accepted by the vendors, the incumbrance remains upon the property and is not affected by the retrocession to four of the heirs of the shares which they had conveyed to their mother. The mortgage rights of the plaintiffs is not affected by the act of retrocession, because neither they nor the heir from whom they acquired the notes were parties to the act of retrocession. "Agreements legally entered into have the effect of laws on those who have formed them. They can not be revoked, unless by mutual consent of the parties, or for causes acknowledged by law. They must be performed with good faith." C. C. 1895.

It is therefore ordered that the judgment heretofore rendered by this court be amended so as to recognize plaintiffs' mortgage on all the property described in the act of mortgage, instead of one-fifth thereof, and that the intervention be dismissed at the costs of the intervenors; as thus amended, it is ordered that the said judgment remain undisturbed.

Mr. Chief Justice Ludeling adheres to the first opinion rendered by this court herein.