## No. 4458.

### CHAFFRAIX & AGAR *v.* CHRISTOPHER C. PACKARD et als.

On the thirtieth of April, 1870, the plaintiffs sold to the defendants the undivided half of a tract of land situated in the parish of Plaquemines, for a certain amount cash and the remainder in three joint promissory notes, due in one, two and three years, and secured by mortgage on the property sold. On the fifth of August, 1871, said property, at the suit of Chaffraix & Agar, was sold and adjudicated to pay the first of said promissory notes. On the second of September, 1872, the said Chaffraix & Agar obtained another order of seizure and sale predicated upon the same mortgage and one of the notes—the second installment of the mortgage debt—to sell the same property previously seized and sold under the first order of seizure and sale.

Packard, one of the purchasers, in 1870, by contract with the plaintiffs, and subsequently under the sheriff's sale, in 1871, of a portion of the mortgaged property which had been divided into lots, has arrested by injunction the sale ordered in 1872, on the following grounds: That the said property was sold and adjudicated on the fifth of August, 1871, in the undivided half of fifteen lots, by an order in the case of the plaintiffs, Chaffraix & Agar, against the same defendants, to satisfy the mortgagees' rights upon said lands *in toto;* that a sufficient amount of cash was required for the matured note and costs; that the balance of the lots were sold upon terms of payments to meet the *unmatured notes;* that the land of said plantation was now owned in separate lots by the persons to whom they were adjudicated at said sale; that by said sale all the mortgages and privileges followed the proceeds, and that the whole of said undivided half so sold was relieved therefrom; that said plantation was no longer the joint property of these defendants; that plaintiffs' rights sought to be enforced are extinguished; that this defendant having purchased and paid for certain distinct lots, is now the owner of the same, unincumbered, and the seizure and attempted sale of the alleged half of said tract is an unwarranted usurpation of his rights and will work him an irreparable injury.

These allegations do not warrant an injunction. They are inconsistent, and the legal deductions drawn from them are incorrect. The plaintiff in injunction first states that the sale on the fifth of August, 1871, was made for cash to pay the matured note, and avers that the balance of the lots were sold on credit to meet the notes not due, and yet he alleges that the sale extinguished the debt and mortgage upon the whole tract, and that he bought certain of the lots and paid for them in full, wherefore he claims to be the sole owner thereof with an unincumbered title and has the right to arrest the sale of the undivided half, although the other purchasers do not complain. The order of sale described by him and annexed to his petition did not authorize the sale of certain of the lots for all cash, and the balance of the lots all on credit, and such sale by the sheriff would be simply null. In the opinion of this court, defendant's allegations in this case, taken altogether and as true, do not show a sale that in the least affects plaintiffs' right to enforce the mortgage by which their notes are secured.

If the defendant Packard, bought two lots or the whole of the undivided half of the plantation, under the order of court and executory process on which he relies, he only acquired thereby the rights of himself and his co-debtors, and they had no rights under the law and their contract, which could impair the plaintiffs' right to have their unmatured notes paid according to their original contract for their payment.

Where the debtor and owner becomes the purchaser, the sale does not extinguish the debt and mortgage not actually paid by the proceeds of the sale—the debtor being bound by his contract and not being able to extingush his debt except by payment according to his stipulations.

If Packard had bought the whole plantation and paid the debt *then due,* he and the land would have remained bound for the portion not due, and the holders of the notes representing such portion could proceed to enforce the payment thereof. The sheriff could have canceled the mortgage only to the extent of the debt actually paid. Packard can not be put in any better condition by being the purchaser of only a portion of the mortgaged property and paying, as he contends, the whole of his bid, which was more than his share of the debt as one of the three co-obligors.

A sale of mortgaged property for cash to pay the instalment due and on a credit to meet those not due, does not extinguish the mortgage as to the latter.

If, under the circumstances of the purchase, the defendant Packard has to pay more than his virile share, as he seems to fear, he may have recourse upon his co-obligors.

APPEAL from the Second Judicial District Court, parish of Plaque-mines. *Pardee, J.  Sambola & Ducros*, for plaintiffs and appel-lees. *Packard*, appellant, in *propria persona.*

HOWELL, J.  On the twenty-fourth September, 1872, the plaintiffs, Chaffraix & Agar, caused executory process to issue against the three defendants and an undivided half of the Sarah plantation, sold by the former to the latter jointly, to be seized and advertised for sale, to pay a note due at two years from the date of sale, being the second of a series of three given by the purchasers and secured by mortgage on the property sold, and plaintiffs ask that the sale be made for cash and on credit, in accordance with their act of sale and mortgage.  These notes were made jointly by the three purchasers, and indorsed by them.  On the sixteenth of the next month, C. C. Packard, one of said purchasers and defendants, arrested the sale under article 739 C. P., alleging that "the said property was sold and adjudicated on the fifth August, 1871, in the undivided half of fifteen lots of ground," by an order in the case of Chaffraix & Agar against these defendants, to satisfy the mortgagees' rights upon said land *in toto;* that a sufficient amount of cash was required for the matured note and costs, "the balance of the lots (in the language of his petition) were sold upon terms of payments of *the unmatured notes;*" that the land of said plantation is now owned in separate lots by the persons to whom they were adjudicated at said sale; that by said sale all the mortgages and privileges followed the proceeds, and the whole of said undivided half so sold was relieved therefrom; that said plantation is no longer the joint property of these defendants; that plaintiffs' rights, sought to be enforced, are extinguished:

*First*—By the extinction of the thing, the plantation having been mortgaged in block, and sold in lots or parts under the constitution.

*Second*—By the extinction of the mortgagees' rights.

*Third*—By the extinction of the debt for which the mortgage was given.

*Fourth*—By mortgagees' relinquishment of mortgage which attached to proceeds of above mentioned sale, and the executory title against the joint defendants having also ceased with said sale, the plaintiffs are without right to proceed as they are attempting; that this defend-ant, having purchased and paid for certain distinct lots, is now sole owner of the same unencumbered, and the seizure and sale of the alleged half of said tract is an unwarranted usurpation of his rights and will work him an irreparable injury.

In our opinion these allegations do not warrant an injunction.  They are inconsistent, and his legal deductions are incorrect.  He first states that the sale on fifth August, 1871, was made for cash, to pay the ma-

tured note, and the balance of the lot on credit to meet those not then due, and yet he alleges that this sale extinguished this debt and mortgage upon the whole tract; and (though rather vaguely) that he bought certain of the lots and paid for them in full, and he is therefore the sole owner thereof, with an unencumbered title, and has a right to arrest the sale of the undivided half, although the other purchasers do not complain. The order of sale, described by him and annexed to his petition, did not authorize the sale of certain of the lots for all cash, and the balance of the lots all on credit, and any such sale by the sheriff would be simply null. In our opinion, his allegations, taken all together and as true, do not show a sale that in the least affects plaintiffs' right to enforce the mortgage by which their notes are secured.

But on the trial, he introduced evidence, by which, he contends, he has shown a sale by the sheriff and a purchase by himself of two of the lots, the price of which he paid in cash, and therefore the said lots are released from the mortgage, and it is suggested that the case be remanded for the sheriff to amend his return and for further proof.

No amount of evidence, in our opinion, could establish such a sale, under or by virtue of the order of court—the executory process—which was to sell for cash sufficient to pay the note due, and on such terms of credit as were granted to the debtors by the original contract, for the payment of the installments not then due, as prescribed by article 686 C. P. By article 690, the adjudication thus made has, of itself alone, the effect of transferring to the purchaser all the rights and claims which the party in whose hands it was seized might have had to the thing adjudged.

If Mr. Packard bought two lots, or the whole of the undivided half under the above order, he only acquired thereby the rights of himself and his co-debtors, and they had no rights, under the law or their contract, which could impair the plaintiffs' right to have their unmatured notes paid according to the original contract for their payment. See 11 La. 70, Rice v. Schmidt.

In 9 La. 11, ib. 99, and 12 R. 206, the doctrine was announced that where the debtor and owner becomes the purchaser, the sale does not extinguish the debt and mortgage, not actually paid by the proceeds of the sale, the debtor being bound by his contract and not being able to extinguish his debt except by payment according to his stipulations.

In Pepper v. Dunlap, 16 La. 170, a leading case, it was held that property could be sold for cash to pay the note due and on credit to meet the unmatured notes according to the contract of mortgage; and in Gallier v. Garcia, 2 R. 319, commenting on this right the court refer

to the above case in 16 La., and say that in such a sale the sheriff could claim only the sum actually intended to be made, and state the assumpsit of the purchaser to pay the outstanding notes.

And this seems but justice; for any other course would place the holders of the notes for the unmatured installments, secured by the same mortgage, in a worse position than that given by articles 707, 708, and 709 C. P., to the holders of second or inferior mortgages.

Now, if Mr. Packard, being an owner and debtor, had bought the whole plantation and paid the debt then due, he and the land would have remained bound for the portion not due, and the holders of the notes representing such portion could, under articles 709 and 732 C. P., proceed to enforce the payment thereof. The sheriff according to the authorities already referred to, could have canceled the mortgage only to the extent of the debt actually paid.

And we can not see how he is placed in any better condition by being the purchaser of only a portion of the mortgaged property, and paying, as he contends, the whole of his bid, which, at most, only amounted to the sum actually due at the time, unless he alleges and shows that the plaintiffs agreed to release him and the portion of the land purchased by him, which he has not done.

The principle upon which the right of a mortgage creditor to sell for cash and on credit rests, is that every part of the property is mortgaged for the whole of the principal debt, and in the distribution of the proceeds of the pledge, the holders of the different installments of the same mortgage are entitled to participate. 1 R. 225. In this case the whole of the undivided half sold by the plaintiffs to defendants was affected by the mortgage, retained to secure each and all the notes given by the purchasers and co-proprietors. See 23 An. 411. The payment of one of the said notes did not release the mortgage as to the others. It follows then that Mr. Packard could not acquire a part of the property free from the mortgage securing the unpaid debt except upon a new and special agreement to that effect with the holders of such debt, which was not made; and as he does not pretend that the property did not sell for enough to meet the debt due and not due, thereby necessitating a pro rata reduction thereon, he can not, upon any hypothesis, claim that any portion of the mortgaged land is exempt from any part of the unpaid debt. If, under the circumstances, he has to pay more than his virile share, as he seems to fear, he may have recourse upon his co-obligors.

The error, as to him, is in supposing that a sale of mortgaged property for cash, to pay the installment due and on credit to meet those not due, extinguishes the mortgage as to the latter. We think the law and the jurisprudence of the State clearly maintain the contrary

doctrine, and that the injunction was properly dissolved, and the plaintiffs allowed to proceed.

Judgment affirmed.

WYLY, J., *concurring in the decree.*    The plaintiffs sued out an order of seizure and sale on the joint note of C. C. Packard, S. W. Sawyer and Mary A. Leonard, for $2833 33, secured by a special mortgage on the undivided half of the "Sarah plantation," in the parish of Plaquemines. The defendant, Packard, injoined the foreclosure of the said mortgage, although on his own showing he only owns one-third of the mortgaged premises.

The court dissolved the injunction and he has appealed.

It appears that Packard, Sawyer and Mrs. Leonard, on the sixteenth of April, 1870, bought from the plaintiffs the undivided half of a tract of land known as the "Sarah plantation," in the proportion of one undivided third each, for the price of $18,000, $10,000 thereof cash, and for the balance they executed to the plaintiffs their three joint notes for $2833 33 each, due in one, two and three years. In the act of sale and mortgage we find the following clause: "And in order to secure the payment of said promissory notes in capital and all interest thereon as aforesaid, together with all said attorney's fees, special mortgage in favor of said vendors, and the future holder or holders of said notes, is hereby retained on the undivided half of said plantation or land herein conveyed, and the purchasers hereby bind themselves not to sell, alienate or encumber the same to the prejudice of this act."

Now the inquiry is, is this mortgage an indivisible obligation binding each and every acre of the mortgaged premises for the payment of the entire debt, interest and attorney's fees, or is it an obligation operating in shares, that is, binding the undivided share of each purchaser only for the portion of debt due by him as a maker of the three joint notes? In other words, suppose one of the purchasers in indivision should pay his part of the debt, as Packard claims to have done, would the mortgage continue on his undivided third of the mortgaged premises to secure the payment of the sums due by Sawyer and Mrs. Leonard?

Packard claims that he paid the first note which matured on the sixteenth of April, 1871, and that his co-obligors contributed no part to the payment of said joint note; that this payment not only released his personal obligation as joint maker of the other two notes for like amount, but it discharged the mortgage on his undivided share of the mortgaged premises.

The position is untenable, both in regard to the personal obligation and the mortgage.

He was only bound to pay one-third of the first note; that was the extent of his personal obligation. The fact that he saw fit to go further and pay the amount due by his joint obligors on that note would not discharge his obligation on the other two notes, so far as the holders thereof are concerned. Such payment would subrogate him to the right of the payee against his co-obligors. It would in no manner discharge his obligation as joint maker of the other two notes of $2,833 33 each, which had not yet matured. Now it is true one act may contain several sales and several distinct mortgages. And if the vendors and vendees in this case had so agreed, a deed and act of mortgage might have been drawn embracing three distinct sales and three distinct mortgages, wherein the plaintiffs would convey to each of the purchasers a separate quantity of land, and to secure the price thereof retain a special mortgage on that separate or distinct part of the land. In such an instrument there would be no joint obligation, as there is in the notes taken in this case, because there would be no *aggregatio mentium* between the purchasers; there would be no joint tie between them, so that if one should pay and the others did not, subrogation would arise by operation of law in favor of the one discharging the joint debt. Each having an independent contract with his vendors, would be bound by a separate obligation, and it would be impossible for the relation of joint obligors to exist between the purchasers. In such an instrument there would necessarily be three independent personal obligations and three distinct mortgages. Here, however, we have but one personal obligation and but one mortgage, to wit: the joint obligation of Packard, Sawyer and Mrs. Leonard, to pay the three notes of $2833 33 each, and to secure these notes and all interest thereon and attorney's fees, a "special mortgage" is retained "on the undivided half of the plantation, or the property herein conveyed."

The property was sold in return for the joint consent or promise of the purchasers to pay the entire price, and a special mortgage was retained to secure the entire amount thereof. If one of the purchasers had signed the act and the other two had refused, can it be pretended that the sale would have been completed for any part of the land? Surely not. Because the essential element of consent would be lacking. The plaintiffs never agreed to sell part of the land in return for the promise of one of the purchasers. They only agreed to sell their entire interest in the "Sarah plantation" for the joint promise of the purchasers to pay the price, which was $18,600—$10,000 thereof cash, and the balance in three joint notes of $2833 33 each.

In Stewart, Hyde & Co. *v.* Madam Buard, 23 An. 411, where each of five heirs sold to their mother, the defendant, his share of his father's

12

estate, and in order to secure the debt to each heir she mortgaged the entire property; this court held that the rescission of the sale by four of the heirs did not remove the mortgage on the entire property to secure the notes given to the fifth heir. True it was that the act contained separate sales of the slaves of the five heirs, but only one mortgage was given in which the purchaser declared that "all the said property to be and remain specially mortgaged in favor of the payees of said notes or their assigns, until the full and complete payment of the same, principal and interest."

Here the purchasers signed the act in which it is declared that "in order to secure the payment of said promissory notes in capital and all interest thereon, together with all said attorney's fees, special mortgage in favor of said vendors, and the future holder or holders of said notes, is retained on the undivided half of said plantation, or the property herein conveyed."

So therefore, whether the act before us contains one sale to three joint purchasers, or three separate sales, is immaterial. Because there can be no doubt that it contains but one mortgage bearing on the whole property conveyed to pay each note, and all the interest and attorney's fees, stipulated to be paid in case it became necessary to resort to legal proceedings to collect the debt.

The note in suit has not been paid. It is secured by special mortgage on all the property conveyed by the plaintiffs to the three purchasers.

The next objection raised by the defendant in support of his injunction is, that all the mortgaged property was sold by the sheriff under the foreclosure of this mortgage on the first note; that he became the purchaser of an amount equal to his undivided third of said property, and having paid the price said property ceased to be encumbered with the unpaid installments of said mortgage, including the note now in suit. This proposition is unsound in law, and it is not borne out by the facts disclosed in the record.

It no where appears in the record that the defendant purchased any part of the property under a foreclosure of the mortgage on the first note.

If the defense were a good one, it certainly devolved on the defendant injoining the foreclosure of the mortgage herein, to establish with competent evidence the facts alleged, as the basis of said injunction. If the title, which he pretends to have acquired at the sale under the foreclosure on the first note exists, he should have offered in evidence the deed in support of the allegation. If the deed has been destroyed, the fact should be proved before secondary evidence of title to real estate can be received.

Now, what is the evidence which the defendant adduces in support of his defense that he has acquired a new title to his part of the property under the foreclosure of this mortgage on the first note? He offers the writ of sale, commanding the sheriff to sell the mortgaged property for cash, sufficient to pay the amount of the first note, interest and costs, and also the amount of the attorney's fee, and the sale to be "on terms of credit corresponding with the terms of payment of the unmatured notes aforesaid." The note now in suit and the one due one year later are the unmatured notes referred to. Upon this writ there is the following return:

"Received June second, 1871, and executed the within writ by seizing and taking into my possession the Sarah plantation, advertising and selling the same, and return this writ upon the showing that the amount of the same has been paid and satisfied.

"Signed,                    .          BART DAWNEY, Sheriff."

This return does not show that the sheriff observed the formalities required by law to make a forced sale; he can not certify his conclusion of law that a legal sale was made; his return must state the facts, in order that the court may determine whether or not there was a sale of the property. The return does not show that notice of seizure was served upon Packard, Sawyer and Mrs. Leonard, the joint owners of the property; it does not show when, how and where the advertisement was made; when, where and how the sale was made; whether the property was appraised; to whom it was adjudicated, and at what price; and whether the purchaser complied with the terms of adjudication. In the absence of any evidence of these essential requirements having been complied with, it would be impossible to conclude that there has been a legal sale under the writ which issued to the sheriff. A statement by the sheriff of his conclusion of law on the question, whether the property was sold under the writ or not, can not supply the deficiency in his return.

In order to show that he paid the amount due under that writ, the defendant adduced a receipt signed by E. Lawrence, which is as follows: "Received by direction and for account of Mr. L. Bayhi, sheriff, from Mr. C. C. Packard the sum of fifty-five hundred and ninety-one dollars and twenty-six cents on account of the two writs of seizure and sale of Chaffraix & Agar, and E. Lawrence, from the District Court, parish of Plaquemines, against the said C. C. Packard, et als., and attorney's fee and costs of court, and sheriff's fees, as per bill on the reverse of this paper."

The writ referred to in this receipt in favor of Lawrence, was a writ under a different mortgage and bearing on different property than that embraced in the mortgage now sought to be enforced.

Assuming the correctness of the statement in this receipt signed by Lawrence (and of the truth thereof there is no evidence, because Lawrence not being the sheriff, did not seize it under oath), and what does it amount to? It only confirms the statement in the return, that the sheriff "returned this writ upon the showing that the amount of the same has been paid and satisfied." It does not prove that there was a sale according to law under the writ of the property; nor does it in any manner establish the defense that the defendant Packard acquired thereunder a new title to the property, conveyed by plaintiffs to him, Sawyer and Mrs. Leonard in indivision.

The defendant offered in evidence a letter from E. Lawrence to the sheriff which is as follows: " You will see by receipt given to Mr. C. C. Packard that he has paid for his proportion of the notes in suit by Chaffraix & Agar and myself, and also handed me the cash as per receipt given him for costs, etc. You will therefore please make out his title for the property purchased by him on the Sarah plantation."

Now the mortgage which Lawrence sought to foreclose rested on one-half of the Sarah plantation, and the mortgage of the plaintiffs rested on the other half thereof.

If this were a controversy in regard to the mortgage in favor of Lawrence as to the payment of the notes secured thereby, the letter would have been admissible. But Lawrence's letter is no evidence against plaintiffs in this suit. If he had sworn to the truth of the statements therein contained, it would not bind the plaintiffs; it would not be admissible, because it is the mere *ex parte* statements of a witness; the plaintiffs have not had an opportunity to cross examine. I think, therefore, that the judge did not err in refusing to admit the letter of Lawrence in evidence against the plaintiffs, and the bill of exceptions of the defendant was not well taken. The receipt and letter of Lawrence can not establish the allegation that Packard acquired a new title to the property under the foreclosure of the mortgage on the first note. If they could be regarded as proof on this point, they do not state the fact. Nor is it stated in the sheriff's return. If the sheriff's return is untrue, the defendant should have had it corrected so as to conform to the truth. He can not expect this court to presume from the unsworn statement of Lawrence, a stranger to this mortgage, that he (Packard) acquired the property at a sale on the first mortgage note.

But suppose he did buy in his part of the property on the pretended foreclosure of the mortgage note, would that be a good defense to this proceeding on the second note in the same mortgage? Would such purchase give him a new title to the property? I think not. The defendant really acquired nothing by the adjudication of his own property to himself on the mortgage note which he subscribed jointly with

two others for the price of said property. Before the pretended forced sale he owned one-third of the property, and the plaintiffs were the authors of his title; after the pretended forced sale he was merely the owner of the same property, and the plaintiffs remained the authors of his title. The pretended sale resulted neither in a change of title nor a change of possession. The sheriff, as agent of the defendant, appointed by law to sell his property to pay his mortgage debt, offered the property for sale, and at the offering it was adjudicated to the owner or the person making the sale through the sheriff and the machinery of the law.

The defendant, to say the most, simply bid in his own property and paid the debt; there was no transfer of ownership and possession' there was no sale.

Taking the facts as we find them in the record, the position of the defendant in this case is utterly indefensible.

Being merely the owner of an undivided third of the mortgaged property he injoins the plaintiffs from selling any part thereof, notwithstanding their mortgage importing a confession of judgment bears on all the property mentioned in the act to secure the payment of the notes, all the interest thereon and the attorney's fees.

It is not pretended that the note upon which this executory process issued has been paid, or that it is in any manner discharged. It is the joint obligation of the defendant and the two other purchasers. He is bound personally for one-third of the note, and the entire property is specially mortgaged to secure it.

I therefore concur in the decree in this case.

————

LUDELING, C. J., *dissenting.* On the thirtieth of April, 1870, Chaffraix & Agar sold to C. C. Packard, S. W. Sawyer and Mary A. Boulligny, wife of P. Leonard, the undivided half of a tract of land, situated in the parish of Plaquemines, in the proportion of one undivided third to each of the purchasers. The price stated is $18,500—$10,000 cash, and the remainder in the three joint promissory notes of the vendees, of $2833 33 each, with eight per cent. interest from date, due in one, two and three years, and secured by a mortgage on the property sold.

On the thirty-first day of May, 1871, Chaffraix & Agar obtained an order of seizure and sale under said mortgage, against Packard, Sawyer and Leonard, to sell the property purchased by them to satisfy the notes above mentioned. Under the writ the property was seized and advertised, and the return of the sheriff on the writ, states that the property was sold and the writ satisfied, although it does not state to whom the property was sold and for what price.

On the twenty-first of September, 1872, the said Chaffraix & Agar obtained another order of seizure and sale, predicated upon the same mortgage and one of the notes, the second installment of the mortgage debt, to sell the same property previously seized and sold under the first order of seizure and sale.

On the twelfth day of October, 1872, Packard obtained an injunction to prevent the sale of his property, on various grounds, to wit: That a suit had been brought, on the mortgage debt, when the first of the series of notes had matured, and 'an order of seizure and sale had been obtained in May, 1871; that the property mortgaged had been surveyed and subdivided into fifteen separate lots, and sold in pursuance with the said order of sale for cash, to pay the matured note and all costs, and on terms of credit corresponding with the maturity of the notes not due; that by the partition of the land and sale in separate lots, the mortgage for the credit installments attached to the separate lots *pro rata*, and the old mortgage was extinguished; that at the sale of the lots in August, 1871, Packard bought two lots and paid the full price bid, and that said two lots are unencumbered by the mortgage now attempted to be enforced against them, and the seizure and sale thereof is unauthorized by law.

There was judgment dissolving the injunction, and the plaintiffs appealed.

On the trial the plaintiffs in injunction took two bills of exceptions. The first was to the reception of the act of mortgage, on the ground substantially that it was dead, the property mortgaged having previously been sold under an order of sale issued under said mortgage.

If the legal position stated in the objection be conceded, still that would be no reason for excluding the act of mortgage. In truth the evidence attempted to be excluded is necessary to enable the court to decide upon the merits of the pleas in the petition of injunction.

The second bill was to the ruling of the judge *a quo*, excluding, as irrelevant, a letter written by E. Lawrence to the sheriff of the parish of Plaquemines, who had made the sale under the writs. It is proper here to state that two writs or orders of seizure and sale had been issued againtst the property in question in favor of the vendors, E. Lawrence and Chaffraix & Agar, who had each sold to the vendees an undivided half of said Sarah plantation, and that E. Lawrence, the plaintiff in one of the suits, appears to have acted as the agent of the sheriff in making the settlement with Packard, after the sale of the property under the mortgage, and had received the payment of the price bid by Packard; and this letter was witten to the sheriff after settlement with Packard. It is as follows:

Chaffraix & Agar v. Packard et als.

"AUGUST 25, 1871.

"Mr. L. Bayhi, deputy sheriff, or B. Daunoy, sheriff:

"Dear Sir—You will see by receipt given to C. C. Packard, that he has paid for proportion of the notes in suit by Chaffraix & Agar and myself, and also handed me the cash as per receipt given him for costs, etc. You will, therefore, please make out his title for the property purchased by him on the Sarah plantation.

"E. LAWRENCE."

I think the letter should have been received as part of the *res gestæ.* Greenl. E. 1 § 120.

On the merits three questions are presented for solution:

*First*—Does a sale under a mortgage extinguish that mortgage?

*Second*—Were the separate interests of the co-purchasers mortgaged to pay the proportions of the debts due by the others?

*Third*—If so, did the purchase by Packard of two of the lots, at a sale made under the mortgage, relieve the property thus bought, from the mortgage, after he complied with his bid?

I. It is well settled that a sale, under the mortgage, when one not the debtor buys, destroys the mortgage; and the mortgage follows the proceeds of the sale. If any part of the price was on a credit, the mortgage exists to secure the payment of the notes given for the price bid. The old debt is extinguished by the sale, and consequently the mortgage, its accessory, is also extinguished. 5 N. S. 149; 7 N. S. 479; 16 La. 161.

II. I am of opinion that the separate interest of Packard, in the lands purchased by himself, Sawyer and Leonard, was not mortgaged for his co-purchasers' portions of the price.

It has already been stated that Packard, Leonard and Sawyer bought an undivided half of the Sarah plantation, "in the proportion of one undivided third each," and "they acknowledged delivery of possession for themselves, their heirs and assigns, in the proportion of one undivided third each." They paid the cash installment, and gave their joint notes for the remainder of the price, which was secured by a mortgage, retained on the property sold.

From the care taken by the parties in the act of sale, to distinguish the proportion of interest bought by each, and in payment whereof they executed their joint notes, it appears that it was their intention to acquire such distinct parts of the property, and to mortgage such parts only for the proportion of the price thereof due by each—in the same manner as if they had purchased by separate acts of sale.

"Several obligations, although created by one act, have no other effect than the same obligations would have had if made by separate contracts." C. C. art. 2084; 15 La. 594. Neither solidarity nor securi-

tyship can be presumed. Therefore, if Packard has paid his proportion of the price to Chaffraix & Agar, they should not be presumed to sell his property for the debts of others.

III. But if it be conceded that the mortgage was given on the whole property as a security for the payment of the whole price, that the distinct portion of each buyer was mortgaged for the debt of his co-purchasers, still the sale to Packard, made by the sheriff under the mortgage, would relieve the lots bought by Packard from the mortgage, so far as the debts of his co-obligors are concerned; for as to those debts for which Packard is not personally bound, his land alone was debtor or security. When it was sold for those debts the obligation against the land had been satisfied. At that sale, *quoad* the debts due by his co-purchasers, Packard must be regarded as a third party, and when he paid the price bid by him he and his said lands were released from further liability under the mortgage.

The property having been subdivided and sold in separate lots, it seems that Packard bid over two-thirds of the appraisement of the property, and he paid the amount of his bid in cash, and this money was distributed *pro rata* among the mortgage creditors, Chaffraix & Agar receiving their proportion thereof. It is now contended that these lots thus sold under the mortgage to Packard may again be sold under the same mortgage to pay the second installment. This is clearly an error. The mortgage is indivisible—that is, the property mortgaged can not be sold for a part of the debt but must be sold for the whole debt, and the proceeds of the sale must be distributed equally on the several installments, whether due or not. If Packard paid cash instead of executing his note for the portion of the price going to the installment not then matured, and it was received by the holder of said note, he is discharged. Thus, if Packard has paid the third of the whole price of the original purchase—for which alone he was personally bound—he is discharged from personal liability. And if he has paid the amount of his bid, and the parties entitled to receive it have received the price, the land thus sold for the debts of others is free from the mortgage. The only inference to be drawn from the imperfect returns of the sheriff in the writs is that the whole Sarah plantation was sold; the returns on the writs state that "the property was sold and the writ returned, satisfied." The writs commanded the sale of the whole property to pay the whole debt, and the law so directed. We can not presume that the sheriff disregarded the commands of the law and of the writs. It is said that Packard personally owes the proportions of each of the unpaid notes for which he bound himself, which it is supposed are unpaid. But it is an error to assume that any part of the original debt is due. From the returns the writs

were satisfied by the sale of the Sarah plantation—therefore these notes were extinguished, and the purchasers who bought the thirteen _other lots on a credit alone can be pursued for any portion of the price unpaid.

It seems that Packard only bought two of the fifteen lots into which the plantation was divided; and that he paid cash for the two lots, which was enough to satisfy the note due and all costs and attorney's fees; and as that seems to be the only money that was distributed among the creditors, as shown by the statement of E. Lawrence, it is fair to infer that the other thirteen lots were sold on a credit; and if the sale was thus made with the consent of the parties, the mortgagees can not disregard the sale, and seize and sell the second time the two lots bought and paid for by Packard. The evidence in the record preponderates in favor of the plaintiff. The defective returns of the sheriff should not prejudice the plaintiffs' rights. It is the adjudication, and not the sheriff's return so received, which confers title.

But I think the ends of justice will be subserved by remanding the case, to enable the parties to have the sheriff amend his returns on the orders of seizure and sale, by stating more fully what he did under them according to law, and to enable the parties to show all the facts in regard to the payments and settlements made by Packard.

I therefore dissent from the opinion of a majority of the court.

TALIAFERRO, J., concurring in the dissent of C. J. Ludeling.